**TARVER et al., Appellants,**

v.

**CALEX CORPORATION et al., Appellees.**

[Cite as *Tarver v. Calex Corp.* (1998), 125 Ohio App.3d 468.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 C.A. 149.

Decided Jan. 29, 1998.

470

*Jan R. Mostov* and *Kevin D. Mager*, for appellants.

*Christopher J. Newman* and *Richard N. Selby*, for appellees.

Cox, Judge.

This matter presents a timely appeal from a decision rendered by the Mahoning County Common Pleas Court, granting the motion for summary judgment filed by defendants-appellees, Calex Corporation et al., on all nine causes of action set forth in the complaint filed on March 2, 1995 by plaintiffs-appellants, James Tarver et al.

The nine causes of action in appellants' complaint establish claims against appellees as follows:

1. Sexual harassment and discrimination in violation of R.C. Chapter 4112;

2. Racial discrimination in violation of R.C. Chapter 4112;

3. Assault and battery against appellee, John Brace;

4. Assault and battery against appellees, Calex Corporation and James Arora, based upon the theory of *respondeat superior*;

5. Intentional infliction of emotional distress against appellee, John Brace;

6. Negligent infliction of emotional distress against appellee, John Brace;

7. Intentional infliction of emotional distress against appellees, Calex Corporation and James Arora, based upon the theory of *respondeat superior*;

8. Negligent infliction of emotional distress against appellees, Calex Corporation and James Arora, based upon the theory of *respondeat superior*;

9. Negligent failure to control appellee, John Brace, against appellees, Calex Corporation and James Arora.

Appellees filed their answer to appellants' complaint on April 7, 1995 and filed an amended answer on August 4, 1995. Following the filing and resolution of various pretrial motions, appellees filed a motion for summary judgment on March 27, 1996, which addressed each cause of action set forth in appellants' complaint. On May 10, 1996, appellants filed a memorandum in opposition to appellees' motion. Appellees then filed a reply brief in support of their motion on June 14, 1996.

Appellant, James Tarver, had been employed by appellee, Calex Corporation, since March 28, 1994. Appellant, Robert K. Varner, had been employed by appellee, Calex Corporation, since December 2, 1993. Tarver and Varner filed this action based upon their assertions that they had been sexually harassed by appellee, John Brace. In particular, Tarver alleged that Brace had touched his crotch on one occasion, and possibly patted his buttocks on several other occasions. Varner alleged that Brace had touched his penis without his consent on two separate occasions: once soon after he started working for appellee, Calex Corporation, in January or February 1994 and then again in February 1995. Varner also claimed that Brace had patted him on the buttocks on five occasions.

Tarver, a black male, additionally alleged that he was subjected to verbal racial discrimination by Brace. Tarver testified during his deposition to a frequent pattern of intertwined sexual and racial harassment by Brace that continued throughout his period of employment at Calex Corporation.

Both appellants testified during their depositions that Brace's conduct caused them unnecessary stress and worry while on the job, including the fear of being discharged. For example, Tarver stated that Brace approached him and clearly proposed that if he would show Brace his penis, then Brace would transfer him from a difficult job on the press to an easier one in the warehouse packing room. Brace's proposition to Tarver was also communicated to Tarver's friend and co-worker, James Payne, whose affidavit was entered into evidence in this matter.

Tarver further stated during his deposition that he was constantly subjected to racial slurs by Brace. Tarver testified that he reported this conduct to James Arora, the director of Calex Corporation, sometime in early or mid 1994. Arora apparently asked Tarver whether racial slurs were being made by Brace and Tarver answered in the affirmative. Arora denied that this meeting ever took place.

On July 26, 1996, the trial court filed its judgment entry granting summary judgment in favor of appellees on all nine counts of appellants' complaint. This appeal followed.

Appellants' sole assignment of error alleges:

"The trial court erred prejudicially when it granted appellees' motion for summary judgment."

Civ.R. 56(C) recites, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As set forth by the Ohio Supreme Court in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." (Citations omitted.)

The Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support its claims.

We find that appellees, as the moving party herein, did not satisfy their initial burden with regard to their motion for summary judgment on each and every cause of action set forth by appellants. We will address appellants' causes of action in the order in which they were addressed by the trial court.

Appellants first assert that the sexual harassment and discrimination to which they were subjected constituted a violation of R.C. Chapter 4112. Appellants argue that state law claims for sexual harassment brought pursuant to R.C. Chapter 4112 are subject to and interpreted according to the same standards applicable to federal harassment claims brought under Title VII of the Civil Rights Act of 1964. *Ohio Civ. Rights Comm. v. Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 630 N.E.2d 669.

Neither Title VII nor R.C. Chapter 4112 expressly states that sexual harassment is actionable. However, it has been held that in some instances, harassment based on gender can be severe enough to interfere with the terms and conditions of employees' jobs to the extent that such employees are actually discriminated against because of their gender. The United States Supreme Court has offered guidance to trial courts when faced with the troublesome issue of sexual harassment and discrimination based upon gender. In *Meritor Sav. Bank v. Vinson* (1986), 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49, 58–59, the United States Supreme Court referred to the Civil Rights Act of 1964 and pointed out that in 1980, guidelines were issued by the Equal Employment Opportunity Commission specifying sexual harassment as a form of sex discrimination prohibited by Title VII. While not binding on the courts by reason of their authority, such guidelines constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. *Meritor, supra.* The United States Supreme Court in *Meritor* went on to say that when a supervisor sexually harasses a subordinate because of the subordinate's gender, that supervisor "discriminate[s]" on the basis of sex within the meaning of Title VII of the Civil Acts Right of 1964.

The Ohio Supreme Court has held that trial courts should apply Title VII federal case law to interpret issues in cases brought pursuant to R.C. Chapter 4112. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 575 N.E.2d 1164. Additionally, appellants present case law which effectively demonstrates the direction which federal district courts are moving regarding the issue of same-gender sexual harassment claims. In *Equal Emp. Opportunity Comm. v. Walden Book Co., Inc.* (M.D.Tenn.1995), 885 F.Supp. 1100, the court held that same-gender sexual harassment is cognizable under Title VII.

Appellees, on the other hand, contend that R.C. Chapter 4112 does not provide a remedy for sexual harassment where the claimant and the alleged harasser are the same gender. The trial court agreed with this contention. The rationale for holding that Title VII and, therefore, R.C. Chapter 4112 do not provide a cause of action for same-gender sexual harassment was set forth by the court in *Goluszek v. Smith* (N.D.Ill.1988), 697 F.Supp. 1452, 1456:

"The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv.L.Rev. 1449, 1451–52 (1984). Title VII does not make all forms of harassment actionable, nor does it even make all forms of verbal harassment with sexual overtones actionable. The 'sexual harassment' that is actionable under Title VII 'is the exploitation of a powerful position to impose sexual demands or

pressures on an unwilling but less powerful person.' *Id.* at 1451.. Actionable sexual-harassment fosters a sense of degradation in the victim by attacking their sexuality. *Id.* at 1455. In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex."

Conversely, appellants state that reliance upon the holding in *Goluszek* is misplaced. In *Walden Book Co., supra,* 885 F.Supp. at 1102–1103, the court explained:

" [T]he *Goluszek* court's requirement that for male on male sexual harassment to be actionable under Title VII, the harassment has to create an anti-male environment in the workplace, is contrary to the law regarding sexual harassment in the Sixth Circuit. 697 F.Supp. at 1456. No court has ever explicitly interpreted Title VII as requiring a plaintiff to prove that the person doing the discrimination is not of the same gender. Furthermore, application of the *Goluszek* court's reasoning to this case would be illogical because it is obvious that sexual harassment by a homosexual supervisor of the same sex is exaction of a condition of employment which, but for his or her sex, an employee would not have faced." (Footnote omitted.)

Subsequent to the holding in *Walden Book Co.* other courts throughout the United States have held that a claim for same-gender sexual harassment is actionable. In *Ecklund v. Fuisz Technology, Ltd.* (E.D.Va.1995), 905 F.Supp. 335, 338–339, the court thoroughly explained this issue:

"*Goluszek* is the case upon which virtually all courts have relied in holding that same sex discrimination does not state a claim under Title VII. However, *Goluszek* does not persuade this Court and can easily be distinguished on its facts. It involved a (heterosexual) male employee who was taunted by (hetero-sexual) male co-workers about his single status and lack of girlfriends. In *Goluszek,* the plaintiff was being harassed *about* sexually-related matters; he was not actually being harassed *because* he was male. That factual distinction is critical to appreciate Ecklund's position. This plaintiff's allegations, if proven, would clearly establish that she was harassed solely because she is female, and that is the very evil against which Title VII protects." (Emphasis *sic.*)

Subsequent to *Ecklund Williams v. Dist. of Columbia* (D.D.C.1996), 916 F.Supp. 1, 7–9, discussed at length the issue under review and the court's analysis provided:

"Simply put, Title VII broadly prohibits all forms of sex discrimination, which includes sexual harassment. Contrary to the conclusory statements offered as argument, Title VII makes no distinction based upon sexual orientation: the determinative question is not the orientation of the harasser, but whether the sexual harassment would have occurred *but for* the gender of the victim.

" * * * *

"Although the authority upon which the defendant would rely is inapposite, other federal courts have found that same-sex sexual harassment is beyond the reach of Title VII. However, these courts all rely, directly or indirectly, upon the reasoning of *Goluszek*, which reasoning this Court cannot accept. Without citing to the statute or case law, or even to the underlying congressional history of Title VII, the *Goluszek* court concluded that Congress' concern in enacting Title VII was about abuses stemming from an imbalance of power 'which results in discrimination against a discrete and vulnerable group.' *Goluszek*, 697 F.Supp. at 1456 (citing solely to a 1984 student law review note). This Court agrees with Judge Preska, who, in *Sardinia v. Dellwood Foods, Inc.*, 1995 WL 640502, 64 U.S.L.W. 2329, 69 Fair.Emp.Prac.Cas. (BNA) 705, 67 Emp.Prac.Dec.P. 43784, No. 94–C–5458 (S.D.N.Y., Oct. 30, 1995), pierced *Goluszek's* reasoning.

"Judge Preska cited at least seven analytical problems underlying *Goluszek*. First, the support underlying its central proposition came not from Congress, but from a law student. *Id.* at 4. Second, the student note was written long before the Supreme Court even handed down Meritor Savings Bank. *Id.* Third, as Judge Preska noted, 'there is nothing in the language of Title VII to support a finding that same-sex harassment is not prohibited. * * * On the contrary, the language of the statute is non-exclusive, creating a broad rule of workplace equality. Title VII makes discrimination at the workplace on the basis of gender illegal, period.' *Id.* at 5.

" * * * *

" * * * There is no legislative history that suggests that victims of sexual harassment must be sexually harassed by harassers of the opposite sex before they may invoke the protections of Title VII." (Citations and footnote omitted.)

The case law upon which the trial court relied in deciding that state law does not recognize causes of action for same-gender sexual harassment did not represent the leading federal case law addressing this issue. Rather, such cases were a select few and can be factually distinguished from the case at bar. For example, *Goluszek* departs from the clear command in *Meritor, supra,* that when a supervisor harasses a subordinate because of the subordinate's gender, the supervisor discriminates on the basis of sex.

Appellees point to *Retterer v. Whirlpool Corp.* (1996), 111 Ohio App.3d 847, 677 N.E.2d 417, for the proposition that R.C. 4112.02(A) does not provide a cause of action for same-gender sexual harassment. This is incorrect. *Retterer* holds simply that R.C. 4112.02(A) does not include a category of sexual orientation and specifically excludes homosexuality. The court in *Retterer* provided that the Ohio

civil rights statutes, R.C. Chapter 4112, do not include sexual orientation among their protections.

Further, in *Retterer*, the appellate court merely held that same-gender sexual harassment was not actionable under R.C. Chapter 4112 due to the fact the plaintiff therein did not present evidence to indicate that he was discriminated against because he was a male, but, rather, set forth evidence relating only to his sexual orientation, which, as stated, is not protected by R.C. Chapter 4112 or Title VII. However, R.C. Chapter 4112 does afford individuals with the means by which to assert a cause of action when they are being discriminated against on the basis of their gender, as is the case here. Thus, appellants' assertion that R.C. Chapter 4112 does recognize the issue of same-gender sexual harassment is well taken, and we find that the trial court erred in granting summary judgment in favor of appellees on appellants' cause of action for sexual harassment and discrimination. Therefore, this particular portion of appellants' argument is found to have merit.

Appellants next argue that with respect to the first and second causes of action in their complaint, the trial court erred when it granted summary judgment to appellees for the reason that the conduct complained of was not sufficiently severe or pervasive to alter the conditions of appellants' employment and create an abusive work environment. The trial court relied upon *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295, in granting summary judgment to appellees on the first and second causes of action set forth in appellants' complaint.

 With respect to count one, the trial court specifically provided that even after viewing the allegations in a light most favorable to the plaintiffs, the action complained of was not severe or pervasive enough to alter the conditions of employment. The question of severity is critical in determining whether appellants' claim is actionable under R.C. Chapter 4112.

In *Harris, supra*, 510 U.S. at 22, 114 S.Ct. at 370–371, 126 L.Ed.2d at 302, the Supreme Court discussed the type of conduct that would constitute abusive-work-environment harassment under Title VII and indicated that such conduct had to be more than merely offensive. However, the Supreme Court went on to say:

"But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible affects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees

because of their race, gender * * * offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor* * * * merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

"We therefore believe the District Court erred in relying on whether the conduct 'seriously affect[ed] plaintiff's psychological well-being' or led her to 'suffe[r] injury.' Such an inquiry may needlessly focus the factfinder's attention on concrete psychological harm, an element Title VII does not require. * * *. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, *Meritor* * * *, there is no need for it also to be psychological injurious."

Following a careful review of *Harris*, we find that the trial court's reasoning was contrary to the standards which were set forth in *Meritor* and reaffirmed in *Harris*.

In Ohio, if a claim is brought under R.C. Chapter 4112 against an employer for "hostile work environment" sexual harassment, the plaintiff is required to demonstrate, among other things, that "the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile or offensive work environment." *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 270, 642 N.E.2d 395, 400, citing *Harris, supra.*

In the case at bar, the record indicates, through the deposition testimony offered by both appellants and the sworn affidavit of appellants' co-worker, that the harassment in question had the purpose or effect of unreasonably interfering with appellants' work performance or in creating an intimidating, hostile, or offensive work environment. Both appellants testified that appellee, John Brace, subjected them to threatening, intimidating, and offensive behavior. Further, both appellants testified that they believed that if they told Brace not to repeat his behavior, they would be fired.

Civ.R. 56(E) provides in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

The deposition testimony offered by both appellants, along with the sworn affidavit of James Payne, raised a genuine issue of material fact that remained to be litigated. Thus, appellants' argument in this regard is well taken and is found to have merit.

█  With respect to Tarver's claim of racial discrimination in violation of Title VII, the trial court granted summary judgment in favor of appellees, holding that Tarver had failed to establish that the alleged racial harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment.

Looking to applicable federal case law interpreting Title VII to determine the elements of racially "hostile work environment" harassment in violation of R.C. 4112.02(A), we find that federal courts employ the same general criteria in considering claims of racial and/or sexual harassment under Title VII. See *Meritor, supra,* and *Barney v. Chi Chi's, Inc.* (1992), 84 Ohio App.3d 40, 616 N.E.2d 269.

█  In order for Tarver to prevail on his claim of racial harassment, he must successfully demonstrate the following:

1.  He was a member of the protected class;

2.  He was subjected to unwanted harassment;

3.  The harassment complained of was based upon race;

4.  The harassment had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile or offensive work environment. *Harris, supra,* 510 U.S. at 20, 114 S.Ct. at 369–370, 126 L.Ed.2d at 300–301.

█  The key issue with respect to appellees' motion for summary judgment is whether the alleged racial slurs had the effect of unreasonably interfering with Tarver's work. The standard used in making this determination is set forth in *Harris. Harris* provides in 510 U.S. at 21–22, 114 S.Ct. at 370–371, 126 L.Ed.2d at 302, that the harassment complained of must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Clearly, based upon Tarver's deposition testimony, the racial slurs directed at him by Brace "sometimes every day, sometimes every other day," were sufficiently severe to survive a motion for summary judgment. Therefore, this part of appellants' argument is found to be with merit.

█  Appellants next argue that with respect to the first, second, and ninth causes of action set forth in their complaint, the trial court erred when it granted summary judgment to appellees for the reason that the definition of "employer" contained in R.C. 4112.01(A)(2) did not encompass individuals and that individuals could not be held liable on a cause of action brought pursuant to R.C. Chapter 4112.

There is a vast amount of conflicting case law on this subject. For guidance, the Ohio Supreme Court has held that trial courts should apply Title VII federal case law to interpret issues in sexual harassment claims. *Little Forest Med. Ctr.*

*of Akron, supra.* With this in mind, appellants direct our attention to *Highlander v. K.F.C. Natl. Mgt. Co.* (C.A.6, 1986), 805 F.2d 644, 649, wherein the court reasoned that because "Title VII defines 'employer' to include 'a person engaged in an industry affecting commerce * * * and any agent of such a person,' knowledge of an employment decision based on impermissible sexual factors is imputed to the employer." Appellants further contend that "[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.* (C.A.4, 1989), 879 F.2d 100, 104. The evidence presented by way of the deposition testimony offered by both appellants, along with Payne's affidavit, indicates that appellee John Brace did, in fact, exercise a significant amount of control over the conditions of employment while working as an agent for Calex Corporation and may therefore qualify as an "employer" under R.C. Chapter 4112 on this point.

Appellees, on the other hand, cite *Redman v. Lima School Dist. Bd. of Edn.* (N.D.Ohio 1995), 889 F.Supp. 288, 292, which states:

"I agree with the courts denying individual liability. As the Ninth Circuit noted in *Miller* [*v. Maxwell's Internatl., Inc.* (C.A.9, 1993), 991 F.2d 583], the statutory scheme of Title VII indicates Congress did not intend to impose individual liability. Liability under Title VII is expressly limited to employers with fifteen or more employees because Congress 'did not want to burden small entities with the costs associated with litigating discrimination claims.' *Miller, supra,* 991 F.2d at 587. Given this protection for small employers, it is 'inconceivable that Congress intended to allow civil liability to run against individual employees.'" *Id.*

The courts have been mindful of the language in Section 2000e(b), Title 42, U.S. Code, which appears to extend liability to "agents" of an employer, but have concluded that this language was included solely for the purpose of incorporating the theory of *respondeat superior* into Title VII. *Miller v. Maxwell's Internatl., Inc.* (C.A.9, 1993), 991 F.2d 583, 587.

The definition of "employer" applicable to appellants' sexual harassment claims is set forth in R.C. 4112.01(A)(2):

"'Employer' includes the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer."

This language is quite similar to the definition provided in Title VII. In looking to federal cases for guidance, Ohio courts have relied upon the recent case of *Gausmann v. Ashland* (N.D.Ohio 1996), 926 F.Supp. 635, 640–641, which states:

" * * * Ohio courts have not squarely addressed the question of whether a plaintiff may pursue a claim under § 4112.02(A) against a government supervisor employee in his individual capacity * * *.

"The Court is compelled to conclude that Gausmann does not state a claim under § 4112.02(A) against Burgess in his individual capacity. The reasoning behind precluding an 'individual capacity' suit under Title VII applies equally to preclude a suit under § 4112.02(A). Both statutes prohibit 'employers' from discriminating. In Title VII, 'the "agent" provision in the statutory definition of "employer" only ensures that employers cannot escape respondeat superior liability.' *Bremiller* [*v. Cleveland Psychiatric Inst.* (1995),] 879 F.Supp. [782] at 788. * * * The Ohio statute defines 'employer' to include 'any person acting directly or indirectly in the interest of an employer,' instead of merely using the term 'agent.' * * * Nonetheless, it seems equally clear that the Ohio statutory definition is meant only to ensure that employers cannot escape respondeat superior liability. Accordingly, neither statute authorizes a claim against a government supervisory employee in his individual capacity."

The rationale which the federal courts have applied in interpreting Section 2000e(b), Title 42, U.S. Code so as to preclude individual liability under Title VII is equally applicable to causes of action brought pursuant to R.C. Chapter 4112. Thus, appellants may not maintain the first and second causes of action against Brace as an individual employer█

█ However, appellants' claim against appellee, James Arora, as an individual is actionable based upon *Hart v. Justarr Corp.* (1994), 98 Ohio App.3d 673, 649 N.E.2d 316. *Hart* is quite similar to the instant case in that it dealt with an employee who brought suit against a corporate employer and one of its shareholders (who was also a director and officer of the corporation), claiming that another employee committed sexual assault and battery against her and that the defendants engaged in sexual discrimination by creating a hostile work environment. The appeals court held, among other things, that the evidence presented a genuine issue of material fact concerning whether the employer knew or should have known of an employee's alleged misbehavior, thereby precluding summary judgment. The court also held that the defendant, as a director and officer of the corporation, could be held liable as an employer on the claim of sexual harassment. The appeals court offered in its analysis that if the employer has the ability and knowledge to control an employee in question, then the employer *may* be liable for the acts of that employee. *Hart* also narrowed the question down to whether a director or officer of a corporation could be liable as an employer

under the rule set forth in *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428. The Ohio Supreme Court in *Kerans* found that a supervisor may be liable as an employer and stated at paragraph two of its syllabus:

"Where a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business."

With respect to the direct, individual liability of Arora as an employer under appellants' first, second and ninth causes of action, the analysis advanced in *Kerans* to reach the conclusion announced in paragraph two of its syllabus is instructive:

"An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees, even where the employee's actions do not serve or advance the employer's business goals. Whether the employer has acted appropriately in a particular situation is a factual matter to be determined on a case by case basis." *Kerans, supra,* 61 Ohio St.3d at 493, 575 N.E.2d at 433.

Arora should not be held personally liable for the acts of Brace merely because of his status as a corporate officer. Rather, his liability extends from the alleged knowledge he had concerning Brace's actions and his apparent failure, as a corporate officer, to react appropriately under the circumstances. The record indicates that there was disputed testimony as to whether Arora had knowledge of Brace's alleged actions and/or his alleged history of such conduct. Consequently, this would preclude summary judgment in favor of appellees as a matter of law. For these reasons, appellants' contention that Arora may be an "employer" as defined in R.C. 4112.01(A)(2) is well taken.

Appellants next argue that with respect to the cause of action for assault asserted against appellees, the trial court erred when it granted summary judgment to appellees for the reason that appellants failed to produce sufficient evidence to demonstrate that either appellant was harmed by Brace's actions or that either appellant actually suffered any injury.

Appellants' third and fourth causes of action set forth claims for assault and battery against Brace directly, and against Calex Corporation and Arora based upon the theory of *respondeat superior.* In its judgment entry, the trial court found that appellants failed to produce sufficient evidence to demonstrate that either of them apprehended harm occasioned by Brace's actions or that they

suffered any injury at all. Appellants contend that their deposition testimony is sufficient to show that they did, in fact, suffer injury due to Brace's actions. Appellants further argue that proximate cause is only an element of a negligence action and once an assault and battery is established, actual damages arising therefrom are unnecessary.

The trial court relied solely upon *Matlock v. Ohio Dept. of Liquor Control* (1996), 77 Ohio Misc.2d 13, 665 N.E.2d 771, in stating that appellants must prove proximate cause and damages against Brace in order to maintain a battery action against him.

Appellants also cite *Matlock, supra,* wherein the court stated at 18, 665 N.E.2d at 774:

"[L]iability for the intentional tort of battery occurs when there is a harmful or offensive contact. This rule is the same as the Restatement of Torts' view and the Supreme Court of Ohio's view. Similarly, assault is the beginning of an act which, if consummated, would constitute battery." (Citations omitted.)

The testimony offered by both Tarver and Varner indicates that Brace's actions were nonconsensual and that both men were offended by what occurred. The extent of injury to their persons seems to reach only a level of emotional distress rather than actual physical harm. The Ohio Supreme Court provided guidance with respect to the damages suffered by appellants in stating that cases involving sexual harassment and/or sexual assault and battery are analogous in this regard:

"Generally, injured employees receive coverage only for economic losses resulting from their accidents—medical bills, lost wages, and diminished earning capacity. However, aside from expenses which they may incur for psychiatric care, victims of sexual harassment generally do not suffer economic loss. Their injuries are much less tangible and often are not susceptible to a neat compensatory formula. Thus, even if this court were to hold that psychiatric conditions resulting solely from emotional stress in the workplace are compensable under the workers' compensation scheme, most victims would not obtain appropriate or sufficient relief.

"* * * While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self-esteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights." *Kerans, supra,* 61 Ohio St.3d at 490, 575 N.E.2d at 431.

Although the foregoing may assist trial courts in determining damages, it does not relieve appellants' from the burden of producing sufficient evidence to sustain a claim for assault and battery. To prove assault and battery

under Ohio law, a plaintiff must establish that the defendant unlawfully touched him/her with the intent of inflicting injury or at least creating fear of injury. *Blankenship v. Parke Care Centers, Inc.* (S.D.Ohio 1995), 913 F.Supp. 1045. To constitute battery, the conduct complained of must be harmful or offensive. *Blankenship, supra.*

We agree with the trial court that appellants failed to present sufficient evidence to demonstrate that either of them apprehended harm occasioned by Brace's actions or that they suffered injury at all. Therefore, appellants may not maintain their third cause of action against Brace.

Appellants next argue that with respect to the cause of action for assault and battery set forth in their complaint against Calex Corporation and James Arora, the trial court erred when it granted summary judgment to these appellees for the reason that appellants produced no evidence to allow liability against Calex Corporation and James Arora as being responsible for Brace's actions.

Appellants assert that Calex Corporation and Arora are liable for Brace's actions on the theory of *respondeat superior,* and cite *Kerans, supra,* wherein the Ohio Supreme Court held, 61 Ohio St.3d at 490, 575 N.E.2d at 432:

"In determining whether to impose liability based on *respondeat superior* on an employer for the sexually harassing acts of one of its employees, federal courts have employed traditional agency principles. Specifically, they have held that where an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment."

Furthermore, the court in *Hart, supra,* stated, 98 Ohio App.3d at 676–677, 649 N.E.2d at 318:

"As a general rule, a person is not liable for the wrongful acts of third parties. Under the doctrine of *respondeat superior,* however, an employer may be liable for the wrongful acts of employees if that person is acting within the scope of employment. Even when the employee is acting outside the scope of employment, the employer, as in *Kerans,* may be liable for the acts of an employee if the employer has the ability and knowledge to control that person." (Citations omitted.)

Appellants failed to present sufficient evidence which might indicate that Brace was able to commit assault and/or battery against them by virtue of the authority or apparent authority vested in him by Calex Corporation and Arora. Therefore, it cannot be said that Brace's actions took place within the scope of his employment. As insufficient evidence was presented to demonstrate material

issues for trial on this point, the trial court properly granted summary judgment in favor of appellees with regard to appellants' fourth cause of action.

▮▮ Next, appellants maintain that the trial court erred when it granted summary judgment in favor of appellees concerning their fifth and seventh causes of action relating to intentional infliction of emotional distress for the reason that appellants' emotional harm was not shown to be severe and debilitating.

The court in *Rine v. Sabo* (1996), 113 Ohio App.3d 109, 680 N.E.2d 647, reiterated the elements necessary to sustain a claim for intentional infliction of emotional distress as follows:

1. The defendant intentionally or recklessly caused emotional distress;

2. The defendant's conduct was extreme and outrageous and went well beyond the bounds of decency;

3. The defendant's actions proximately caused plaintiff's psychic injury; and

4. The mental anguish suffered by the plaintiff was so serious that no reasonable person would be expected to endure it.

Neither Tarver nor Varner sought medical or psychological treatment for their alleged emotional injuries. Both Tarver and Varner indicated that Brace's actions never interfered with their ability to do their jobs. Tarver specifically admitted that he did not suffer any emotional or mental anguish, anxiety, or harm to his psychological well-being. Varner admitted that the extent of his emotional harm was that he felt nervous when Brace was around. Varner indicated that Brace's actions "hurt him inside" and caused him to suffer from migraine headaches. It also troubled Varner that he had to go home and discuss this matter with his girlfriend.

These minor complaints are not sufficient to show the severe and debilitating emotional harm necessary to support a cause of action for intentional infliction of emotional distress. Therefore, the trial court properly granted summary judgment in favor of appellees with regard to appellants' fifth and seventh causes of action.

Appellants also submit that the trial court erred when it granted summary judgment in favor of appellees with regard to their sixth and eighth causes of action regarding negligent infliction of emotional distress. Pursuant to *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 647 N.E.2d 507, the trial court held that Ohio does not recognize claims for negligent infliction of emotional distress in an employment context.

The Ohio Supreme Court in *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120, held:

"Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person."

As stated above with regard to appellants' claim for intentional infliction of emotional distress, appellants' minor complaints are not sufficient to sustain a claim for negligent infliction of emotional distress, even if such a claim was recognized in an employment context by Ohio courts. Therefore, the trial court properly granted summary judgment in favor of appellees on appellants' sixth and eighth causes of action.

Finally, appellants complain that the trial court erred in granting summary judgment in favor of appellees with regard to their ninth cause of action regarding the negligent failure of appellees, Calex Corporation and James Arora, to control appellee, John Brace. The trial court held that appellants failed to demonstrate an injury proximately resulting from Brace's alleged conduct. The trial court further held that appellants could not maintain an action against appellee, James Arora, based upon the theory of *respondeat superior*.

As we previously stated herein, Arora can be held liable as an employer pursuant to the dictates of *Hart* and *Kerans*. Further, with regard to whether appellants' alleged injuries were proximately caused by Brace's actions, we reiterate that the Ohio Supreme Court in *Kerans* provided that sexual harassment laws are concerned with a more intangible injury to personal rights. Based upon appellants' deposition testimony and the affidavit offered by Payne, sufficient evidence was presented to demonstrate a material issue for trial concerning appellants' ninth cause of action. Therefore, the trial court erred in granting summary judgment in favor of appellees on this point.

With regard to the majority of the causes of action set forth by appellants, the record indicates that appellees, as the moving party in the instant case, failed to produce some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrated that appellants, as the nonmoving party, had no evidence to support their claims.

It is this writer's understanding that the United States Supreme Court is this term hearing a case of same-gender sexual harassment which may well clear up the issues present in this case. It well may be that the courts should not have to monitor misconduct in the workplace, but until the legislators spell out the who, what, and when they wish to protect, the effect is the same.

The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment accordingly.*

VUKOVICH and WAITE, JJ., concur.