OPINION
{¶ 1} This timely appeal arose from a dispute over unpaid fees for the rental of trucks used to haul loads of asphalt. The Belmont County Court, Western Division, awarded the complainant, HLC Trucking, damages of $4,066. HLC Trucking is the Appellee in this case. Appellant Sam Harris argues that HLC Trucking should not have been permitted to amend its complaint to include a claim of unjust enrichment, and he contends that the evidence does not support a finding of unjust enrichment. Mr. Harris also argues that he should not have been held personally liable for the judgment. Mr. Harris' arguments are unpersuasive, and the judgment of the trial court is hereby affirmed.
 {¶ 2} On July 22, 1999, HLC Trucking filed two small claims complaints against Greg Harris, d/b/a St. Clair Village Mobile Homes, in Belmont County Court, Northern Division. HLC Trucking alleged that Greg Harris rented trucks from HLC Trucking in 1998 and that the rental fees were not paid.
 {¶ 3} On September 30, 1999, Greg Harris filed a third party complaint against Sam Harris alleging that Sam Harris was the party actually liable for any rental fees, essentially asserting a claim of indemnification. On December 7, 1999, Sam Harris filed an answer to the complaint as well as his own third party complaint against Greg Harris for an alleged bounced check in the amount of $1,942.74.
 {¶ 4} The cases were consolidated and transferred to the regular docket of the Belmont County Court, Western Division.
 {¶ 5} On February 6, 2001, HLC Trucking filed an amended complaint ("first amended complaint"), alleging that Greg and Sam Harris were jointly and severally liable for $4,066 in damages.
 {¶ 6} The case went to bench trial on May 21, 2001. Although the transcript is not altogether clear, it appears that in 1998 HLC Trucking received four orders for the delivery of asphalt from St. Clair Village Mobile Homes, whose office is located in Bridgeport, Ohio. One of the deliveries was to Bridgeport, Ohio; one was to Moundsville, West Virginia, to property owned by Sam Harris; and two were to a mobile home park on GCP Road, also owned by Sam Harris. There was some evidence that Sam Harris was in charge of the paving projects requiring the services of HLC Trucking and that Sam Harris actually made some of the calls that placed orders for Appellee's trucks.
 {¶ 7} Sam Harris argued at trial that the property in Moundsville, Ohio, was leased to St. Clair Village Mobile Homes, and that therefore, any asphalt delivered to that property was the responsibility of St. Clair Village Mobile Homes. (Tr., p. 17.) Greg Harris disagreed with this view, and testified that Sam Harris and his businesses were responsible for paying the bills relating to those properties. (Tr., pp. 64-65.)
 {¶ 8} There was some discussion at trial about the relationship between Sam Harris' businesses and various businesses owned and controlled by Greg Harris, but it is not clear from the record whether the parties' businesses had anything other than an informal relationship with one another.
 {¶ 9} During trial, the court asked HLC Trucking to specify the legal theory under which it sought relief, and Appellee's attorney stated that the complaint was based on the theory of unjust enrichment (Tr., pp. 54-55).
 {¶ 10} The court did not immediately return a ruling on HLC Trucking's complaint.
 {¶ 11} On June 1, 2001, HLC Trucking filed a motion to amend pleadings in order to include a claim for unjust enrichment. Appellee noted that it had already pleaded a claim of unjust enrichment in its first amended complaint, although the words "unjust enrichment" were not used. It appears that HLC Trucking filed the motion to amend simply for the sake of clarity
 {¶ 12} On June 4, 2001, the trial court filed a journal entry allowing the defendants until June 15, 2001, to file objections to HLC Trucking's motion to amend the pleadings. The journal entry also stated that no hearing would be held on the motion unless requested. The record does not contain any such request.
 {¶ 13} In a Journal Entry dated June 26, 2001, the trial court sustained the motion to amend the complaint to include a claim for unjust enrichment. In the same journal entry the court found Sam and Greg Harris to be jointly and severally liable to Appellee in the amount of $4,066. The court also denied Sam Harris' third party complaint. No mention is made of the disposition of Greg Harris' third party indemnification complaint, but presumably it was dismissed based on the court's apportionment of joint and several liability.
 {¶ 14} This appeal was timely filed on July 11, 2001.
 {¶ 15} Sam Harris' first assignment of error asserts:
 {¶ 16} "The county court erred by granting the plaintiff's motion to amend its complaint post trial"
 {¶ 17} Appellant argues that Civ.R. 15(A) governs the trial court's actions in this matter. The rule states:
 {¶ 18} "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."
 {¶ 19} Sam Harris contends that HLC Trucking waited until the end of trial to request leave to amend its complaint so that the complaint would contain a claim for unjust enrichment. Mr. Harris concedes that Civ.R. 15(A) gives a trial judge great discretion in granting leave to amend a complaint. Mr. Harris asserts, though, that a trial judge should not grant leave to amend a complaint if there is a, "showing of bad faith, undue delay, or undue prejudice to the opposing party." Turner v.Cent. Local School Dist. (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261. Mr. Harris asserts that there was undue delay in filing HLC Trucking's second motion to amend their complaint. Mr. Harris also asserts that he was prejudiced by the delay because he was not aware that the issue of unjust enrichment was being litigated at trial.
 {¶ 20} HLC Trucking argues that its request for leave to amend the complaint was not based on the authority of Civ.R. 15(A), but rather, on Civ.R. 15(B), which states:
 {¶ 21} "(B) Amendments to conform to the evidence
 {¶ 22} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
 {¶ 23} HLC Trucking argues that the issue of unjust enrichment was fully litigated at trial, and that the trial court was within its discretion to amend the pleadings after trial. HLC Trucking's argument is correct.
 {¶ 24} Before addressing Sam Harris' main argument, it should be noted that HLC Trucking's First Amended Complaint, filed on February 6, 2001, can easily be interpreted as giving Sam Harris notice of an unjust enrichment claim. Ohio's liberal rules of pleading only require a complaint to include, "a short and plain statement of the claim showing that the party is entitled to relief, * * *." Civ.R. 8(A). Although some claims, such as fraud, have heightened pleading requirements (see Civ.R. 9), a claim of unjust enrichment is not subject to any special pleading requirements. Drozeck v. Lawyers Title Ins. Corp. (2000),140 Ohio App.3d 816, 825, 749 N.E.2d 775; West v. West (Sept. 2, 1997), 10th Dist. No. 96APE11-1587.
 {¶ 25} Unjust enrichment is based on the principle that a person should not be allowed to profit or enrich himself inequitably at another's expense, and should be required to make restitution to the party suffering the loss. Henkle v. Henkle (1991), 75 Ohio App.3d 732,738, 600 N.E.2d 791.
 {¶ 26} "To support a claim of unjust enrichment, a plaintiff must demonstrate that (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff. Hambleton v. R.G. Barry Corp.
(1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. The plaintiff must confer the benefit as a response to fraud, misrepresentation, or bad faith on behalf of the defendant. Natl. CityBank v. Fleming (1981), 2 Ohio App.3d 50, 58, 2 OBR 57, 440 N.E.2d 590. That is, there must be a tie of causation between the plaintiff's loss and the defendant's benefit. Elbert v. West (Aug. 20, 1986), Lorain App. No. 3985, unreported, at 5, 1986 WL 9131." Laurent v. Flood Data Serv.,Inc. (2001), 146 Ohio App.3d 392, 399, 766 N.E.2d 221.
 {¶ 27} HLC Trucking alleged in its first amended complaint that Greg and Sam Harris requested the use of HLC Trucking's vehicles to haul asphalt; that it provided trucking services for the Harrises; that Sam and Greg Harris had some kind of business relationship; that they never paid for the rental cost of the trucks; and that the trucking services were valued at $4,066. The words "contract" and "breach of contract" were not used in the complaint. These allegations should have alerted Sam Harris that unjust enrichment was the primary issue in this case.
 {¶ 28} Moving on to Sam Harris' main argument, the record reveals that, pursuant to Civ.R. 15(B), HLC Trucking requested leave to amend its complaint so that the complaint would conform to the evidence presented at trial relating to unjust enrichment. (6/1/2001 motion). It was on this basis that the trial court granted HLC Trucking leave to amend the complaint. (6/26/2001 J.E.). HLC Trucking also alerted the trial court of its unjust enrichment claim at trial. (Tr., pp. 54-55.) As noted above, allegations contained within the complaint should have alerted Sam Harris of the unjust enrichment claim. Assuming arguendo, though, that the complaint did not originally contain a claim for unjust enrichment, Civ.R. 15(B) gave the trial court authority to allow the amendment and also rendered harmless any error with respect to the amendment. Sam Harris' reference to and reliance on Civ.R. 15(A) are in error.
 {¶ 29} The trial court has broad discretion in allowing pleadings to be amended under Civ.R. 15(B). Spisak v. McDole (1984),15 Ohio St.3d 62, 63, 472 N.E.2d 347. "[S]uch discretion will not be disturbed in the absence of `gross abuse' by the trial court." Id.
 {¶ 30} There are two types of amendments provided for by Civ.R. 15(B): "[t]he first applies when the parties have expressly or impliedly consented to the trial of issues not contained in the pleadings. * * * A second type of amendment may arise where there is an objection to the evidence offered on grounds that it is not within the issues framed by the pleadings." Hall v. Bunn (1984), 11 Ohio St.3d 118, 121,464 N.E.2d 516. HLC Trucking's second request to amend the pleadings falls under both categories listed in Hall.
 {¶ 31} Appellant tried to make it clear at trial that this case involved unjust enrichment:
 {¶ 32} "THE COURT: So you're saying that this, this is unjustly enriched?
 {¶ 33} "MR. DAVIES: Correct.
 {¶ 34} "* * *
 {¶ 35} "THE COURT: But your [sic] saying it's Sam Harris' responsibility?
 {¶ 36} "MR. DAVIES: That's correct. He owns the property individually and that again, he has received unjust enrichment being provided the services and in our third-party complaint, in our amended complaint, we brought that in." (Tr., pp. 54-55.)
 {¶ 37} Sam Harris' counsel attempted to have the case dismissed immediately after the discussion about unjust enrichment. (Tr., p. 56.) Counsel stated that he was not familiar with the theory of unjust enrichment or its defenses. (Tr., p. 56.)
 {¶ 38} Ignorance of the law is not the same thing as lack of notice of a claim. If Sam Harris' counsel was confused as to the nature of HLC Trucking's claim, he could have filed a motion for a definite statement prior to filing his answer. Civ.R. 12(E). Counsel did not file a Civ.R. 12(E) motion. Sam Harris was not acting pro se in this matter, and his counsel should have been aware of the type of claim that was being raised.
 {¶ 39} Civ.R. 15(B) also allows a party to object to the introduction of evidence on the grounds that it is not within the pleadings. Although Sam Harris' counsel objected to allowing the case to be tried as an unjust enrichment case and attempted to have the case dismissed, counsel never objected to any of HLC Trucking's evidence as it was being presented. Furthermore, counsel never requested a continuance, as was permitted by Civ.R. 15(B). It was well within the trial court's discretion to allow the case to be tried under an unjust enrichment theory when Sam Harris' counsel did not object to any of HLC Trucking's evidence and did not request a continuance.
 {¶ 40} Furthermore, the record reveals Sam Harris' implied consent to litigate the issue of unjust enrichment. "Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion."State ex rel. Evans v. Bainbridge Twp. Trustees (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, paragraph three of the syllabus.
 {¶ 41} "* * * Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue." Id. at paragraph one of the syllabus.
 {¶ 42} It is clear from the trial transcript that at least part of HLC Trucking's theory at trial was that Sam Harris personally received the benefit of its trucking services (by receiving a new asphalt parking lot on property that he owned), and that Sam Harris used the office and personnel of St. Clair Village Mobile Homes to secure those trucking services. (Tr., pp. 15-17.) Sam Harris at first attempted to deny that he ordered the asphalt or that it had anything to do with him personally. He eventually admitted that his signature was on at least one of the invoices; that some employees of St. Clair Village Mobile Homes were authorized to use his signature; that he knew the trucking services were ordered; and that he owned the property that received part of the asphalt deliveries. (Tr., pp. 15-17, 25, 32.) Nancy Lucas, a former office manager for HLC Trucking, testified that someone representing himself as Sam Harris ordered at least some of the asphalt deliveries. (Tr., p. 50.) Greg Harris testified that Sam Harris was in charge of the paving projects, which included ordering and accepting delivery of the asphalt. (Tr., pp. 64-65.) Ms. Margaret Cooper, a former employee of St. Clair Village Mobile Homes, testified that she signed Sam Harris' name on the shipping invoices and that Sam Harris later agreed that she had properly signed his name to the invoices, signifying that the shipments from HLC Trucking had been received. (Tr., p. 82.)
 {¶ 43} The above evidence reveals that the unjust enrichment claim was thoroughly discussed at trial. Sam Harris' counsel and counsel for Greg Harris cross-examined every witness and had an opportunity to present their own witnesses. It should also be noted that Sam Harris did not file any separate memorandum in opposition to HLC Trucking's post-trial written motion to amend its pleading. For all the reasons stated above, the trial court was within its discretion to grant HLC Trucking's motion to amend the pleadings to reflect that the complaint contained a claim for unjust enrichment. Appellant's first assignment of error is overruled.
 {¶ 44} Sam Harris' second assignment of error asserts:
 {¶ 45} "The county court erred by entering a judgment against the defendant, Sam Harris, individually"
 {¶ 46} Sam Harris argues that he cannot be held liable for the debt of St. Clair Village Mobile Homes, which he asserts is a corporation. Mr. Harris makes some general comments indicating his belief that corporate officers and shareholders are shielded from liability, except under the theory of "piercing the corporate veil." Mr. Harris then concludes that HLC Trucking did not prove the elements necessary for "piercing the corporate veil" so as to create personal liability for corporate debt. Sam Harris' curt and broadly sweeping arguments are not persuasive.
 {¶ 47} Sam Harris raised, as an affirmative defense, the notion of the corporate shield or corporate veil, and it was incumbent upon Mr. Harris to prove that defense. Hommel v. Micco (1991), 76 Ohio App.3d 690,698, 602 N.E.2d 1259. The record reveals that no corporation was ever made a party to this action. Although Sam Harris assumed throughout trial that St. Clair Village Mobile Homes was a corporation, he never offered specific evidence that it was a valid corporation, what kind of corporation it was, or its relationship to subsidiary businesses under the parties' control. All of these factual issues would have been relevant as first steps to proving that Sam Harris was protected by the laws governing corporations. Therefore, the trial court's decision could have been based on a conclusion that there were no valid corporations involved in this matter.
 {¶ 48} Assuming arguendo that St. Clair Village Mobile Homes was a corporation and that its corporate status was proved at trial, Sam Harris' argument remains unpersuasive. He is correct that, in many circumstances, corporate officers and shareholders may not be held responsible for corporate debt or for specific contracts that the officer enters into on behalf of the corporation. Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287,617 N.E.2d 1075. The general rule is that corporate officers are not held personally liable for acts of the corporation merely by reason of their official relationship to the corporation. Tarver v. Calex Corp. (1998),125 Ohio App.3d 468, 482, 708 N.E.2d 1041; Stultz v. Artistic Pools,Inc. (Oct. 10, 2001), 9th Dist No. C.A. 20189. The facts of this case indicate that liability was not predicated on Sam Harris' mere status as an officer of the corporation.
 {¶ 49} One of the ways a corporate officer may be held liable for corporate actions is the officer's intent to accept that liability: "A corporate officer is not personally liable on contracts or on express or implied warranties for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual. Whether or not he is so bound, unless expressly stated, depends upon the intent of the parties." Centennial Ins. Co. of New York v. Vic Tanny Intern. ofToledo, Inc. (1975), 46 Ohio App.2d 137, 346 N.E.2d 330, paragraph two of the syllabus.
 {¶ 50} There was evidence that Sam Harris owned businesses called Housing Showcase and Harris Leasing, both located in Moundsville, West Virginia. (Tr., p. 9.) There was evidence that Sam Harris was supposed to pay for all expenditures made by these businesses when those expenses were incurred in the name of St. Clair Village Mobile Homes. (Tr., p. 64-65.) Sam Harris testified that Harris Leasing was a sole proprietorship and that at least part of HLC Trucking's asphalt deliveries were made to the Harris Leasing property. (Tr., p. 23.) This evidence could support a conclusion that Sam Harris intended to be personally responsible for HLC Trucking's asphalt transportation charges.
 {¶ 51} Furthermore, Greg Harris testified that he and Sam Harris entered into a merger agreement in which they agreed to be personally responsible for certain debts and obligations of their combined businesses. (Tr., p. 69.) Although there was considerable debate at trial about the validity of this agreement, the trial court may have believed the evidence about the merger and used it in support of its decision.
 {¶ 52} Based on the aforementioned analysis, it is clear that: (1) corporate law does not dictate the outcome of this case; and (2) even if we could assume that corporate law applies, based on the evidence presented at trial, Sam Harris was properly held personally liable on HLC Trucking's claim. We therefore overrule Appellant's second assignment of error.
 {¶ 53} Sam Harris's third assignment of error asserts:
 {¶ 54} "Even if the county court was correct in granting leave to amend, it erred in determining that the plaintiff satisfied the elements of unjust enrichment"
 {¶ 55} Sam Harris argues that unjust enrichment requires proof that the defendant actually received a benefit and that the defendant committed fraud or other wrongful conduct. He argues that these elements were not proven at trial. Mr. Harris' argument is incorrect.
 {¶ 56} As noted above, the elements of unjust enrichment are: 1) confirmed benefit to the defendant; 2) substantial detriment to the plaintiff; and 3) causal connection between the two. Laurent, supra,146 Ohio App.3d at 399, 766 N.E.2d 221. Usually the causal connection is some type of fraud or misrepresentation. Id.
 {¶ 57} It is obvious that Sam Harris retained a benefit from HLC Trucking's services, at least in relation to the properties the he himself owned, i.e., the Moundsville and GCP Road properties. Sam Harris now has paved lots instead of dirt lots, due in large part to the asphalt deliveries. Not quite as obvious is the benefit to Sam Harris of asphalt delivered to the office of St. Clair Village Mobile Homes in Bridgeport, valued at $247 (Tr., p. 44), because that property was actually owned by Greg Harris. (Tr., p. 63.) Nevertheless, there was some evidence that Sam Harris and Greg Harris had merged their various business entities into one business, and that Sam Harris was a 50% owner of that combined entity. (Tr., p. 22, 61.) Thus, if the combined business entity enjoyed a benefit from HLC Trucking's services, Sam Harris would share in that benefit.
 {¶ 58} The causal connection between HLC Trucking's loss and Sam Harris' gain is fairly simple to locate. Sam Harris was in charge of paving projects at St. Clair Village Mobile Homes. He either called HLC Trucking, or directed someone else to make the call, ordering truckloads of asphalt. The asphalt was ordered so that paved improvements could be made on properties owned or controlled by Sam Harris. The asphalt was ordered in the name of St. Clair Village Mobile Homes, even though the asphalt primarily benefited Sam Harris' personal property. Sam Harris was required to provide the funding for these paving projects, but did not. Therefore, Sam Harris is directly responsible for the events as they unfolded. Sam Harris' actions may not amount to fraud, but they certainly represent a clear causal link in an unjust enrichment action.
 {¶ 59} This case depended primarily on the trial court's interpretation of weak, conflicting, confusing, and largely anecdotal evidence. Although unjust enrichment may not have been the most direct method for HLC Trucking to obtain relief, the record contains evidence to support such a claim. It is primarily up to the trier of fact to determine the weight and credibility of evidence, and a reviewing court will almost always defer to the trier of fact in this area. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 461 N.E.2d 1273. Therefore, we overrule Appellant's final assignment of error, also, and the judgment of the Belmont County Court, Western Division, is affirmed.
Judgment affirmed.
Donofrio and DeGenaro, J., concur.