**RETTERER, Appellant,**

v.

**WHIRLPOOL CORPORATION et al., Appellees.**

[Cite as *Retterer v. Whirlpool Corp.* (1996), 111 Ohio App.3d 847.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-95-56.

Decided July 5, 1996.

850

*Elliott T. Fishman* and *Dennis J. Rasor*, for appellant.

*Kathryn A. Mrkonich, David J. Parsons, Shanthi V. Gaur* and *Thomas A. Frericks*, for appellees.

HADLEY, Presiding Judge.

Plaintiff-appellant, Douglas Retterer, appeals from the judgment entry of the Marion County Court of Common Pleas granting the summary judgment motion of defendants-appellees, Whirlpool Corporation ("Whirlpool"), Barney Rowlinson, and Jeffrey Mouser (collectively, "appellees").

Appellant, an employee of Whirlpool since 1977, filed a complaint on April 20, 1994.[1] The following claims were raised: count one, assault and battery; count two, false imprisonment; counts three and four, sexual harassment and sex discrimination; count five, libel, slander, and defamation; count six, intentional infliction of emotional distress; count seven, sexual harassment and sex discrimination based on the perception of having AIDS; and count eight, failure of Whirlpool to prevent the above unlawful and tortious actions. These claims generally relate to alleged incidents at Whirlpool involving coworkers and Rowlinson and Mouser, supervisors of appellant, which occurred over an extended period of time.

On June 8, 1994, appellees filed an answer and affirmative defenses. Thereafter, appellees filed a motion for summary judgment on August 31, 1995. In support of the motion, appellees included answers to appellees' first set of interrogatories and various excerpts of appellant's deposition. Appellant filed a memorandum in opposition, including his own affidavit, to the summary judgment motion on October 4, 1995. Subsequently, appellees filed a reply memorandum. In its judgment entry of November 7, 1995, the trial court granted appellees' summary judgment motion. In doing so, the trial court found that no weight should be given to the contradictory statements in appellant's affidavit (as compared to his earlier deposition testimony). It is from this judgment entry that appellant raises two assignments of error.

### Assignment of Error No. 1

"The trial court erred by finding no genuine issues as to any material fact remaining to be litigated, in that it failed and refused to consider the affidavit of appellant in determining the motion for summary judgment."

Appellant maintains that his affidavit is admissible. While appellant acknowledges in his brief that the facts in his affidavit "were in some cases different from those stated in his deposition testimony," he also asserts that there is no indication of bad faith or sham. Furthermore, appellant contends that his affidavit supplemented the deposition testimony.

██ In *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341–342, 617 N.E.2d 1123, 1127, the Ohio Supreme Court held:

"[W]hen a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact."

---

1. Appellant has been on medical leave since May 1994.

This court has also found error where a trial court gave no consideration to a party's affidavit filed with her memorandum opposing summary judgment even though the affidavit and an earlier deposition were contradictory. *Grant v. Marion* (Dec. 28, 1995), Marion App. No. 9–95–37, unreported, 1995 WL 771385. In particular, we found that such conflicting statements "go to the credibility of the witness, and not the admissibility of such documents." *Id.* Furthermore, absent a trial court's determination of bad faith concerning an affidavit, the affidavit must be construed as truthful. *Aglinsky v. Cleveland Builders Supply Co.* (1990), 68 Ohio App.3d 810, 816, 589 N.E.2d 1365, 1369.

■ Upon our review, we initially note that the trial court made no specific finding of bad faith regarding the submission of the affidavit. Moreover, even if conflicts exist between the two documents, based upon our decision in *Grant,* the trial court erred in failing to consider appellant's affidavit in its determination of the summary judgment motion. Appellant's first assignment of error, therefore, is well taken.

### Assignment of Error No. 2

"The trial court erred in determining that summary judgment should be afforded as a matter of law."

Within this assignment of error, appellant asserts that there are genuine issues of material fact regarding the causes of action raised in the complaint and, in turn, contends that the trial court erred in granting summary judgment. We will analyze each claim accordingly. First, however, we set forth the standard for granting a summary judgment motion.

Civ.R. 56(C) provides that a motion for summary judgment is appropriate when:

"(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Although the initial burden rests on the moving party, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but * * * must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). However, since a summary judgment is a shortcut resulting in termination of litigation, it must be granted carefully and all reservations must be resolved against the moving party. *Davis v. Loopco Industries, Inc.* (1993), 66

Ohio St.3d 64, 66, 609 N.E.2d 144, 145. Thus, "[e]ven the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor." *Turner v. Turner,* 67 Ohio St.3d at 341, 617 N.E.2d at 1127.

## A. Assault and Battery

The record shows that appellant played jokes on coworkers, including Rowlinson and Mouser, such as putting red tags on their backs and telling workers they could go home early. In contrast, appellant's affidavit states that he did not engage in jokes with supervisors. On several occasions in the late 1980s, apparently as a result of these jokes, Rowlinson and/or Mouser called appellant into a line office. In his affidavit, appellant stated, "I understood that I had to go into the office on those occasions, under the threat of termination." He further indicated that once in the office, the two supervisors poked and tickled him so that he would "jump" and "flop." Appellant claimed that these actions continued despite his protests.

In a 1993 incident in a line office, appellant alleges that the supervisors locked the door to the office, restrained him by holding his wrists, and proceeded to tickle and poke him in the stomach and chest areas. In his deposition, appellant stated that there was a "good possibility" that he was again called into the office for playing a joke. On this occasion, appellant maintained in his affidavit, "At the time they initially restrained me, I said, 'no, no, don't do this,' but they persisted, poking me so that I would jump and 'flop.' I continued to protest." Again, appellant averred that he went into the office due to the fear of facing discipline and/or termination. On the other hand, appellant acknowledged that his supervisors told him more than one time that he was a good employee and that he enhanced the morale of the work force.

■ An assault in tort is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Smith v. John Deere Co.* (1993), 83 Ohio App.3d 398, 406, 614 N.E.2d 1148, 1154. A key element of assault is that the alleged tortfeasor "knew with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.* Battery results when an individual "acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 99, 524 N.E.2d 166, 167. To constitute offensive contact, the contact must be "offensive to a reasonable sense of personal dignity." *Id.* There is a one-year statute of limitations for assault and battery claims. R.C. 2305.111.

■ Initially, we find that appellant's claims for assault and battery, relating to the incidents in the 1980s, are barred by the one-year statute of limitations.

Appellant, however, has set forth facts showing that there are genuine issues of material fact regarding the 1993 incident. He described, in both his affidavit and deposition, the alleged offensive contact which took place despite his protests. Therefore, construing the evidence most favorably for appellant, we cannot conclude that there are no genuine issues of material fact regarding these causes of action.

### B. False Imprisonment

As with his assault and battery claims, appellant's assertion of false imprisonment centers around the incidents in the line offices. Appellant contends that there are genuine issues of material fact regarding his consent of going to and staying in the line office.

The tort of false imprisonment results when an individual intentionally confines another in a restricted area for any appreciable length of time absent lawful justification and without that individual's consent. *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 109, 573 N.E.2d 633, 636. Due to the "continuing nature" of false imprisonment, liability may be imposed even if there was an initial privilege to confine the individual. *Id.* Finally, we note that the statute of limitations for false imprisonment is also one year. R.C. 2305.11(A).

Again, we first find that several of the incidents occurred in the late 1980s. Thus, any claims of false imprisonment regarding those incidents are barred by the statute of limitations. With regard to the 1993 incident, appellant again asserted that he went to the office only because he feared discipline or termination. Appellant further declared, in both his affidavit and deposition testimony, that he was physically restrained in the line office. Thus, even if the initial confinement in the line office was justified, for example, as disciplinary action for disrupting the work environment, there is a genuine issue of material fact regarding the subsequent restraint of appellant. Appellant's assertions, therefore, concerning his claim of false imprisonment are well taken.

### C. Intentional Infliction of Emotional Distress

The following elements must be established in order to recover in an action for intentional infliction of emotional distress:

"1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' * * *; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable

[person] could be expected to endure it.' " *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103.

The Ohio Supreme Court, in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 425–427, 453 N.E.2d 666, 671, citing Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d*, described what constitutes extreme and outrageous conduct:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" * * * The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' "

Additionally, the statute of limitations for intentional infliction of emotional distress is four years. R.C. 2305.09(D). See *Yeager v. Local Union 20*, 6 Ohio St.3d at 375, 6 OBR at 426–427, 453 N.E.2d at 672.

■ In support of his claim for intentional infliction of emotional distress, appellant submits that his affidavit should be considered "as a whole" to show that "the actions of Appellees and Whirlpool employees constitute extreme and outrageous conduct." Appellant cites various incidents, including receipt of blow-up dolls, cartoons, and an item labeled a "penis warmer." He also refers to the above-mentioned line office incidents concerning Rowlinson and Mouser.

Initially, we find that any alleged actions that occurred more than four years before the complaint was filed are barred by the statute of limitations. As to the remaining incidents, appellant has failed to set forth evidence that such actions are so outrageous and extreme to meet the requirements as set forth in *Yeager*. The trial court, therefore, properly granted appellees' summary judgment motion regarding this cause of action.

D. Defamation

In his affidavit, appellant cited to three alleged incidents in support of his claim of defamation. First, appellant asserts that on several occasions, a coworker yelled, "[H]ey, Retterer, how's your AIDS?" Next, appellant stated that a coworker, in the presence of another party, told him "to get away from [me], because I [Retterer] had AIDS." Finally, appellant maintains that a "caution" tape, hung across a bathroom door, referred to him having AIDS.

 Slander refers to spoken defamatory words, while libel is generally defined as written or printed defamatory words. 35 Ohio Jurisprudence 3d (1982), Defamation and Privacy, Sections 1 and 2. More specifically, slander *per se* results from "the very words spoken" and damages are presumed. *King v. Bogner* (1993), 88 Ohio App.3d 564, 567, 624 N.E.2d 364, 366. In contrast, libel is generally defined, in part, as "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace * * *." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289.

 To maintain an action for defamation at common law, including libel and slander, a plaintiff must show:

" '(a) a false and defamatory statement concerning another;

" '(b) an unprivileged publication to a third party;

" '(c) fault amounting at least to negligence on the part of the publisher; and

" '(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' " *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962, quoting 3 Restatement of the Law 2d, Torts (1977) 155, Section 558.

Furthermore, there is a one-year statute of limitations for defamation actions. R.C. 2305.11(A).

The trial court found that some of the incidents with regard to the coworker yelling that appellant had AIDS occurred during the 1980s. Appellant's deposition supports this conclusion. There is no reference to a contrary date. Consequently, these allegations are barred by R.C. 2305.11(A). Furthermore, appellant has failed to set forth evidence establishing genuine issues of material facts regarding these incidents.

 The second claim is cited as occurring in 1993. Appellant testified that he does not have AIDS. He further indicated in his deposition testimony and his affidavit that a supervisor was present when the coworker, on the assembly line, told him to get away because he had AIDS. He testified that the supervisor "turned his head the other way" and "[t]otally ignored it." In his affidavit, appellant stated that the supervisor was present when the coworker made the remark. The trial court concluded that there was no evidence of publication.

As stated above, appellant must present evidence of publication to a third person in order for a claim of defamation to be actionable. In *Wyrick v. Westover Retirement Community* (Mar. 13, 1989), Butler App. No. CA88–06–086, unreported, 1989 WL 21229, the appellate court found no evidence of publication

to withstand a summary judgment motion. In *Wyrick,* a statement was made to appellant in a dining hall. Appellant argued that since others were present, "the court is to assume that the people in the dining hall heard the comment simply by virtue of having ears." Rejecting appellant's argument, the court concluded that appellant had no knowledge of who was present in the dining hall at the time the statement was made or whether if anyone heard the statement.

In the instant case, appellant has identified the individual present at the time of the alleged statement and has indicated, albeit through nonverbal actions, that the individual heard the statement. Since we must construe the evidence presented and inferences from that evidence in favor of the nonmoving party, we find that appellant has met the threshold necessary to defeat summary judgment on this particular claim of defamation.

 Regarding the third incident, appellant stated that when he left the bathroom at work, he found a banner draped across the doorway with the word "caution" written on it. He asserts, in his affidavit, that another coworker told him that "it was a reference to AIDS—that others should stay away from me, because I had AIDS." The trial court found that since the banner contained no defamatory words and the only evidence regarding its meaning was a coworker's hearsay statement, appellant's libel claim failed. We concur with the trial court's conclusion and find that appellant has failed to set forth evidence to establish genuine issues of material fact regarding this particular claim.

E. Sexual Harassment

Appellant contends that his claims for sexual harassment are viable under R.C. 4112.02 and common law. In particular, appellant maintains that he was harassed "on account of his gender" and further that he was subjected to a hostile work environment.

Initially, we note that in analyzing statutory sexual harassment claims, Ohio courts have generally looked to the statute itself, R.C. 4112.02(A), the administrative equivalent,[2] and to federal case law construing Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S. Code.[3] *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 270, 642 N.E.2d 395, 399. Thus, we examine these areas as well as Ohio case law to analyze appellant's claim of sexual harassment.

 R.C. 4112.02(A) provides that it is unlawful for any employer to discriminate on the basis of "race, * * * sex, national origin, handicap, age, or

---

2. Ohio Adm.Code 4112–5–05(J) prohibits sexual harassment "on the basis of sex."

3. Title VII prohibits an employer from discriminating because of a person's sex.

ancestry of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Under the statute, two of the requisite elements for a sexual harassment claim based on a hostile work environment are that an "employee was a member of the protected class" and "the harassment complained of was based upon sex." *Delaney v. Skyline Lodge, Inc.*, 95 Ohio App.3d at 270, 642 N.E.2d at 399–400. Furthermore, we note that the statute fails to include a category of sexual orientation and, in fact, pursuant to the definition of handicap and physical or mental impairment, specifically excludes homosexuality. R.C. 4112.01(A)(13) and (A)(16)(b)(i). See *Greenwood v. Taft, Stettinius & Hollister* (1995), 105 Ohio App.3d 295, 298–299, 663 N.E.2d 1030, 1032 (stating that "the Ohio civil rights statutes, R.C. Chapter 4112, do not include sexual orientation among their protections").

■ We next examine federal case law to determine whether hostile work environment arising from sexual harassment involving two males or concerning an individual's sexual preference is actionable under Title VII. In *Dillon v. Frank* (C.A.6, 1992), 952 F.2d 403, unpublished,[4] the claim of sexual harassment was based on a hostile work environment. In particular, the plaintiff alleged that other employees taunted and threatened him because they thought he was homosexual. The court concluded that there was no cause of action for discrimination on the basis of sexual preference under Title VII. In addition, the court noted that the plaintiff attempted to avoid that conclusion by asserting that he was discriminated against because he was male. Rejecting this argument, the court found that the plaintiff failed to show that "his co-workers would have treated a similarly situated woman any differently."

Likewise, plaintiffs' claim of a hostile work environment because of homosexual writings, drawings, and discussions initiated by coworkers and supervisors was rejected by the court in *Fox v. Sierra Dev. Co.* (D.Nev.1995), 876 F.Supp. 1169. The court reasoned that "[p]laintiffs do not perceive the work environment to be hostile to them because they are men. * * * This is a form of hostility or abuse which is not discriminatory on the basis of sex or gender." *Id.* at 1175.

Additionally, in *Carreno v. Local Union No. 226, Internatl. Bhd. of Elec. Workers* (Sept. 27, 1990), D.Kan. No. 89–4083–S, unreported, 1990 WL 159199, a hostile work environment was claimed because of verbal and physical harassment by other employees concerning homosexuality. The court found that "[w]hile the

---

**4.** In this case, the Sixth Circuit affirmed *Dillon v. Frank* (Oct. 19, 1990), E.D.Mich. No. 90–CV–70799–DT, unreported, 1990 WL 358586.

plaintiff has expressly stated that he is not asserting discrimination based on sexual preference, the undisputed facts indicate that the plaintiff was not harassed because he is a male, but rather because he is a homosexual male. Every derogatory comment made to the plaintiff related to his homosexuality."

Thus, the court, finding no cause of action under Title VII for discrimination based on sexual preference, granted summary judgment against the plaintiff.

Finally, the Ohio Supreme Court in *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, found that the Workers' Compensation Act failed to provide the only remedy for sexual harassment claims and, thus, recognized a common-law action for sexual harassment. In particular, the court found that if evidence in the record implies that an employee had a previous history of sexual harassment behavior of "which the employer knew or should have known" summary judgment should not be granted. *Id.* at 493, 575 N.E.2d at 433. More important, however, the facts of the case clearly relate to sexual harassment based upon appellant's sex. *Id.* at 493, 575 N.E.2d at 434.

In support of his position, appellant points to the following statement in his affidavit, "I do not know of any women who received the same types and level of harassment which I received." Appellant, however, cites numerous physical objects and verbal comments relating to sexual preference. In his deposition, appellant also described a harassment incident which happened to a woman who appellant indicated was a lesbian. Finally, appellant's brief cites no incidents of any other males being harassed.

Based on this, as well as the rest of the record, we find that appellant has failed to set forth evidence to withstand summary judgment regarding harassment because of his sex. Instead, appellant has set forth evidence relating to his sexual orientation. In view of the above analysis, such harassment is not actionable in the instant case and summary judgment was appropriately granted.

F. Disability Discrimination

 Appellant maintains that he was subjected to discrimination because of a perception that he had AIDS. He refers to the same comments alleged in his defamation claim as well as the displaying of a poster concerning AIDS as support for his assertion.[5]

Again, R.C. 4112.02(A) prohibits any unlawful discriminatory practices on the basis of handicap which includes any discrimination with regard to conditions of employment or any other matter related to employment. The definition of

---

5. Appellant contends that even though appellees failed to move for summary judgment on the issue of disability discrimination, the trial court granted judgment on this issue. We note that appellees mention this claim in their summary judgment motion.

handicap includes a physical or mental impairment or "being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Physical or mental impairment, in turn, includes human immunodeficiency virus infection. R.C. 4112.01(A)(16)(a)(iii).

In the instant case, appellant's mere reference to a few comments regarding AIDS and a poster fail to present any genuine issues of material fact regarding discriminatory practices due to the perception that appellant has AIDS. Thus, the trial court appropriately granted summary judgment regarding appellant's disability claim.

G. Negligent Supervision

In count eight of his complaint, appellant argues that Whirlpool "knew or should have known of the foregoing unlawful and/or tortious actions of its employees." On the other hand, appellees assert that since appellant attributes his injury to the negligence of Whirlpool, it falls within the confines of the Workers' Compensation Act. Both parties also cite the *Blankenship* intentional tort exception to the Workers' Compensation Act in support of their positions.

We first reject appellees' claim that the Ohio Workers' Compensation Act conclusively bars appellant's negligent supervision claim. R.C. 4123.74 provides that employers have no liability "to respond in damages at common law or by statute for any injury, * * * or bodily condition, received or contracted by any employee in the course of or arising out of his employment." The definition of injury excludes any "[p]sychiatric conditions except where the conditions have arisen from an injury or occupational disease." R.C. 4123.01(C)(1). Thus, the Ohio Supreme Court stated it was unable to conclude that emotional disturbances "arising solely from emotional stress in the workplace fit within the definition of 'injury' in R.C. 4123.01." *Kerans v. Porter Paint Co.*, 61 Ohio St.3d at 489, 575 N.E.2d at 431.

Next, we discuss the intentional tort exception. In *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, the Ohio Supreme Court held that R.C. 4123.74 and 4123.741 do not preclude an employee from bringing an action for an intentional tort against his employer. See R.C. 2745.01. We agree; however, appellant is claiming that Whirlpool was negligent; therefore, we analyze this claim solely on appellant's claim of negligent supervision.

As a preliminary matter, we note that "an underlying requirement in actions for negligent supervision * * * is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244. Consequently, the previous claims which failed to

withstand summary judgment would, in turn, support no cause of action under a negligent supervision theory.

As to appellant's viable claims, however, appellant must show that Whirlpool breached its duty to act "reasonably and prudently" in supervising its employees. See *Morgan v. Fisher Foods, Inc.* (Dec. 5, 1991), Cuyahoga App. No. 59488, unreported, 1991 WL 261324.

Appellant asserted that a human resources staff person was present "on at least one of the occasions" in the line office, but presents no evidence that Whirlpool failed to act reasonably and prudently. Moreover, appellant apparently made no report to Whirlpool of the various incidents prior to May 1993, even though he encouraged others to utilize the complaint procedures. In May 1993, appellant's attorney wrote a letter to Whirlpool complaining of the alleged conduct. As a result, Whirlpool conducted an investigation and took action. Thus, summary judgment was appropriately granted in favor of appellees.

In conclusion, the second assignment of error is overruled with respect to appellant's claims of intentional infliction of emotional distress, disability discrimination, sexual harassment, and negligent supervision and sustained in part as discussed herein regarding the claims of assault and battery, false imprisonment, and defamation. The judgment of the Marion County Court of Common Pleas is, therefore, affirmed in part and reversed, and the cause is remanded in part in accordance with this opinion.

*Judgment accordingly.*

THOMAS F. BRYANT and EVANS, JJ., concur.