**Paul LUNDY, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORP.,
Defendant–Appellee.**

No. 03–3618.

United States Court of Appeals,
Sixth Circuit.

June 4, 2004.

Paul Lundy, Springboro, OH, pro se.

James M. L. Ferber, Alison Day Hall, Littler & Mendelson, Columbus, OH, for Defendant–Appellee.

Before: MERRITT and MOORE, Circuit Judges; and DUGGAN, District Judge.*

DUGGAN, District Judge.

In this employment discrimination case, Plaintiff–Appellant Paul Lundy ("Lundy"). represented by counsel before the district court, alleged under both OHIO REV.CODE § 4112.02, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, that Defendant–Appellee General Motors Corporation ("GM") maintained a hostile work environment by allowing him to be harassed and discriminated against because of his religion (Christian),[1] national origin (Irish), perceived sexual orientation (homosexual), and perceived disability (obesity and mental incompetence/retardation). Lundy also alleged retaliation as well as state law claims of defamation and intentional infliction of emotional distress. The district court granted summary judgment to GM and dismissed all of Lundy's claims. Acting pro se, Lundy appeals the district court's decision.

For the reasons set forth below, the decision of the district court is affirmed.

## Background & Procedural History

Lundy has been employed by GM since February 1995. He is a "dingman" which means he removes dings and dents. Lundy alleges that beginning in January 1999 he has been subjected to harassment including demeaning, altered photographs, derogatory graffiti, and vandalism. Lundy also alleges that GM did nothing to resolve his complaints and end the harassment. Lundy believes that GM retaliated against him by further harassing him and by increasing the hostility in order to stop him from complaining.

Lundy filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in January 2001 and was issued a right to sue letter on February 16, 2001. Based on its investigation, the EEOC was unable to conclude that GM was in violation of the anti-discrimination statutes. Lundy filed suit on May 11, 2001. On January 30, 2003, GM moved for summary judgment. In an Entry and Order dated April 4, 2003, the district court granted GM's motion for summary judgment.

Although Lundy presented numerous incidences of alleged harassment based on religion to the district court, the court found that only two constitute harassment based on religion. The two incidences were a CD found in Lundy's toolbox with the words "you fat tub of God," and a picture found on one of Lundy's co-worker's toolboxes. The picture was of a human body with a goat head, Santa Claus hat, wings, and horns and it said "Satan Paul" on the top. However, the district court concluded that Lundy had not presented evidence that these incidences in-

---

* The Honorable Patrick J. Duggan. United States District Judge for the Eastern District of Michigan, sitting by designation.

1. In his complaint, Lundy alleged religious discrimination based on his religion, "Chris-

tian." On appeal, Lundy's religious discrimination claim focuses on his beliefs as a Catholic.

terfered with his work performance and that these incidences were not sufficiently severe to create a hostile working environment.

The district court also found that Lundy had presented evidence of harassment based on his national origin. Lundy presented evidence of three pictures of an Irish setter with a face depicting Lundy added to the picture. The picture contained the words "Irish Shiteater." Although the district court noted that Lundy stated during deposition that he did not recall telling anyone at GM that he was of Irish descent [2] and that it was more likely that use of the word "Irish" on the picture referred to the breed of dog depicted, and not Lundy's national origin, the court found that these pictures could be viewed as harassment based on national origin. Again though, the district court concluded that these pictures were not sufficiently severe and that there was no evidence that the pictures interfered with Lundy's work performance.

With respect to his hostile work environment claim based on his perceived sexuality as a homosexual, the district court stated that homosexuality is not protected under either Title VII or Ohio law. In addition, the district court noted that sex is a protected class, but that Lundy did not argue that he was harassed because he was male.

The district court found that although Title VII does not prohibit discrimination based on disability, Ohio discrimination law does. Lundy presented evidence of pictures and cartoons left in his work area making fun of him for being overweight. The district court concluded, however, that based on the evidence presented, no jury would believe that Lundy was being discriminated against by GM employees because they thought he had a physical impairment which limited a major life activity.

The district court dismissed Lundy's retaliation claim finding that he could not satisfy a prima facie case of retaliation because he did not present evidence of retaliatory harassment. The district court concluded that the incidents of retaliatory harassment identified by Lundy were isolated and not serious.

The district court dismissed Lundy's defamation per se claim because Lundy failed to show that the allegedly defamatory statements injured him in his trade or occupation. Finally, the court dismissed the intentional infliction of emotional distress claim noting that Lundy had failed to identify any conduct on the part of GM that could be considered extreme and outrageous, and although Lundy claimed a debilitating emotional injury, he presented no evidence of one.

## Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact for trial unless there is sufficient evidence favoring the nonmoving party, such that a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**2.** Lundy himself is fourth generation American.

## Discussion

In the cover sheet attached to his brief. Lundy identifies the following issues for appeal: religious discrimination, hostile work environment, retaliation, and intentional infliction of emotional distress. In response to "Questions from the Court" (*See* Appellant's Br. at 1), Lundy argues that the district court incorrectly decided the facts when the court decided that he failed to present a case of defamation per se. Lundy's brief, however, is devoid of any arguments related to this claim; therefore, the Court assumes that Lundy has abandoned this claim. Further, the Court will not consider the claims decided by the district court but not designated by Lundy as issues on appeal and not addressed in his principal brief. These claims include his harassment claims based on national origin, perceived sexual orientation, and perceived disability.[3]

### I. *Hostile Work Environment Religious Harassment*[4]

In order to establish a prima facie case of hostile work environment based on religious harassment, Lundy must establish five elements: he is a member of a protected class, he was subjected to unwelcome religious harassment, the harassment was based on religion, the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and employer liability. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999). Courts evaluate the frequency and severity of the alleged conduct to determine whether a reasonable person would find the environment hostile. *Id.*

In his brief. Lundy argues that the district court improperly evaluated a piece of evidence in support of his religious discrimination hostile work environment claim. With respect to this evidence, the district court stated: "Lundy presents evidence that a laminated likeness of a face that he was told had been altered to look like him was placed in the men's urinal and it stayed there until the ink wore off. Lundy does not indicate what he thinks was the meaning of the likeness placed next to a urinal." (*See* J.A., Entry and Order at 7) (internal citation to record omitted). On appeal, Lundy argues that "[t]he fact is that the meaning behind the act is self-explanatory that the act intentional gain [sic] was to humiliate the Appellant." (Appellant's Br. at 5). Lundy has not established that this constitutes harassment based on religion. Accordingly, it cannot contribute to a hostile work environment claim based on religious harassment.

Next, Lundy states that his supervisor, Todd Osborne, told Lundy that he belonged to the KKK, "which the group is known to hate Catholics." (Appellant's Br. at 6). There is no discussion of this incident in the district court's opinion; nor can the Court determine whether the district court was ever presented with this evidence because the briefs and exhibits submitted to the district court have not been included in the joint appendix before the

---

**3.** Lundy also claims that the district court should have applied the Fourteenth Amendment to his claims; however, Plaintiff's complaint does not allege a violation of the Fourteenth Amendment. Arguments raised for the first time on appeal are not considered by the court. *See Brown v. Marshall,* 704 F.2d 333, 334 (6th Cir.1983)(per curiam).

**4.** Ohio courts utilize Title VII case law when construing Ohio's anti-discrimination statute, OHIO REV.CODE § 4112.02. *See Retterer v. Whirlpool Corp.,* 111 Ohio App.3d 847, 677 N.E.2d 417, 424 (Ohio Ct.App.1996). Therefore, the Court's evaluation of Lundy's claims under Title VII applies equally to his state law discrimination claims.

Court. Lundy also notes that a co-worker, referred to as "Musa," saw the number "666"[5] on the side of Lundy's toolbox. (Appellant's Br. at 7). Finally, Lundy has incorporated portions of Musa's deposition testimony into his brief whereby Musa states he saw a picture depicting Lundy having sexual intercourse with a pig and other pictures of goats.

Lundy has not provided the Court with an explanation of the goat pictures but the district court's opinion describes them:

> Next, as evidence of religious discrimination, Lundy identifies a picture of a human body with a goat head, Santa Claus hat, wings, horns and a star on its forehead holding a gift in its hand. The picture says "Satan Paul" on the top and, according to Lundy, "looks satanic." However, Lundy does not know what the picture means or is supposed to mean. This picture was left on top of one of Lundy's co-worker's tool boxes and Lundy does not know who left it there.

> Next Lundy identifies a picture of a goat with a Santa Claus hat on it and the words "Ho, Ho, Ho, It's Santa Paul's" written as if they were being spoken by the goat. Lundy does not recall where he found this picture but he does believe that the goat picture is discrimination against religion.

> Lundy also identifies another picture of a goat. There is an elderly lady's face near the goat head and the words "Paul" and "Greg" were added to the picture. Gregory is Lundy's middle name. Lundy does not remember where he found this picture and does not say what he thinks it means.

(*See* J.A., Entry and Order at 8–9)(internal citations to record omitted). Of these three pictures, only the first, with its reference to "Satan Paul" is arguably harassment based on religion. Thus, Lundy's religious harassment hostile environment claim is based on three incidents: Osborne's comment that he was a member of the KKK, the numbers "666" on the side of Lundy's toolbox, and the "Satan Paul" goat picture.

■ Lundy has not demonstrated that this conduct was based on his religion, Catholicism. This conduct does not reference Lundy's religion and the fact that Lundy may view these symbols as sacrilegious does not mean they were intended to mock or insult his religion. Even if this conduct occurred because of Lundy's religion, it is neither severe, nor pervasive harassment. Rather, it is the sort of isolated conduct not actionable under Title VII. Other courts have found conduct clearly more severe than the incidents complained of in this case to be not actionable under Title VII. *See, e.g., Shabat v. Blue Cross Blue Shield*, 925 F.Supp. 977, 982 (W.D.N.Y.1996), *aff'd* 108 F.3d 1370 (2d Cir.1997)(finding that where supervisor questioned Jewish employee as to why he could not accept Jesus Christ as the messiah since he was Jewish, co-worker asked employee during Passover who he had to kill to make matzah cake, and where supervisor granted employee's request for a personal holiday on Yom Kippur but said "there is no such holiday," the incidents did not create an atmosphere "permeated with discrimination, that is necessary to support liability for creating or tolerating a hostile work environment.") The district

---

**5.** The number "666," according to Appellant, is the "number of the devil." (Appellant's Br. at 8).

court did not err in granting summary judgment on Lundy's hostile work environment claim based on religious harassment.[6]

## II. *Retaliation*

In order to establish a prima facie case of retaliation under Title VII. Lundy must show: 1) that he was engaged in protected activity, 2) his exercise of protected rights was known to the defendant, 3) the defendant took an adverse employment action against him, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) a causal connection between the protected activity and the adverse employment action or harassment. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000). For purposes of this appeal, GM concedes that Lundy was engaged in protected activity and that GM was aware of it. It is also undisputed that Lundy was not subject to an adverse employment action. Lundy contends that he was subjected to retaliatory harassment by management. GM disputes that any supervisor ever harassed Lundy.

In support of this claim, Lundy describes numerous incidents of harassment. First, Lundy describes "a surprise disciplinary meeting" about the tape recording of conversations by Lundy. Lundy did not have time to request union representation for this meeting and he alleges that he was spoken to in a hostile way at this meeting. (Appellant's Br. at 11). It appears from Lundy's brief that he was not disciplined at this meeting. (*Id.* at 12).

The remaining portion of Lundy's argument as it relates to retaliation is less than clear. (*See* Appellant's Br. at 12–13). Lundy informed a supervisor that someone had moved his toolbox, thus increasing the chance that it could be damaged. Allegedly, the supervisor responded by calling Lundy "asinine" and raising his voice. Within a week, the toolbox was damaged. Next, "Dos Santos" (presumably a supervisor) accused Lundy of sticking a piece of sandpaper to his back. Dos Santos later apologized to Lundy after discovering that he did not do it. (*Id.* at 12). Lundy also describes grievances he filed related to overtime pay and the denial of his request to be transferred. These incidents do not constitute severe or pervasive harassment, nor has Lundy demonstrated any causal connection between his protected activity and this harassment. Accordingly, the district court did not err in granting summary judgment on Lundy's retaliation claim.

## III. *Intentional Infliction of Emotional Distress*

Lundy devotes a portion of his brief on appeal to a negligent infliction of emotional distress claim. However, because Lundy did not present this claim to the district court, the Court does not consider it on appeal. *See Brown v. Marshall,* 704 F.2d 333, 334 (6th Cir.1983)(per curiam).

Under Ohio law, a claim for intentional infliction of emotional distress requires a showing of intentional or reckless extreme and outrageous conduct that causes severe emotional distress. *Yeager v. Local Union*

---

**6.** In his brief, Lundy recounts a conversation between himself, his supervisor Tammy Moore, and a co-worker, Jeff Poske. (*See* Appellant's Br. at 9–10). During this conversation, Poske repeatedly uses profane and vulgar language in reference to Lundy. Lundy believes this conversation is "one particular incident of abuse that 'created a hostile work environment.'" (*Id.* at 9). Title VII, however, is not a general prohibition against harassment. It only prohibits harassment based on a protected class, i.e., race, color, religion, national origin, or sex. *See* 42 U.S.C. § 2000e–2(a)(1).

*20, Teamsters,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (Ohio 1983).

■ Lundy has failed to present evidence of extreme and outrageous conduct. Lundy states that fellow GM employee, Donnie Albertini, broke into his tool cabinet, and Musa heard Albertini say in reference to Lundy that he could not "stand that MF." (Appellant's Br. at 22). Further, Lundy states that he was subject to prank telephone calls (Appellant's Br. at 20) and that one day he found a news clipping of Osama Bin Laden with the name "Bin Lundy" written on it. (*Id.* at 24). This conduct cannot be characterized as "atrocious, and utterly intolerable," the standard required to support an intentional infliction of emotional distress claim. *Yeager,* 453 N.E.2d at 671. Thus, the district court did not err in granting summary judgment to GM on Lundy's intentional infliction of emotional distress claim.

### Conclusion

For the reasons set forth above, the district court's decision granting summary judgment in favor of GM is **AFFIRMED** in its entirety.