OPINION
{¶ 1} Plaintiff-Appellant, David F. Rollison, appeals the judgment of the Marion County Court of Common Pleas, granting summary judgment in favor of Defendants-Appellees, Raymond Ball and National Lime and Stone Company (hereinafter referred to as "Ball" and "National" and jointly as "Appellees").[1] On appeal, Rollison argues that the trial court erred in granting summary judgment. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In November of 1999, National hired Rollison. At National, Rollison, who regularly worked during the second shift, performed clean up duties, operated a Bobcat, and did "a lot of shoveling." (Rollison Dep. p. 20).
 {¶ 3} On January 12, 2004, Rollison went to the Marion General hospital, because he had re-injured a previous work related injury. Additionally, Rollison called National before he went to the hospital and left a message informing National that he was not coming into work. Also, while at the hospital, Rollison was asked to take a drug and alcohol test, per National's policy, which he refused to take.
 {¶ 4} In a letter dated January 29, 2004, Ball wrote Rollison stating that National was notified that he refused to submit to a drug and alcohol test on January 12, 2004. Additionally, the letter stated that Rollison's employment with National was terminated and he was discharged for cause.
 {¶ 5} On February 18, 2004, Rollison filed a complaint in the Marion County Court of Common Pleas against Appellees.[2]
In his complaint, Rollison claimed that National violated R.C.4123.90, when it discharged him from employment, and prayed for among other things reinstatement with back pay and reasonable attorney fees.
 {¶ 6} In March of 2004, Appellees filed an answer, wherein, the Appellees stated that Rollison was terminated for just cause pursuant to an agreement between National, Rollison, and the union.[3]
 {¶ 7} In September of 2004, counsel for Appellees deposed Rollison. During his deposition, Rollison stated that he injured himself because he was "[l]ifting too much weight [and] after lifting the weight, [he] had to get the Bobcat and finish up [his] job and it was just too much. Being under the restrictions [he] was under from the doctor, it was just too much for [him]." (Rollison Dep. p. 35). Rollison continued that after he re-injured himself, he informed William Hawthorne, a non-union member and National employee, and Adam Utz, a National employee, but he was unable to inform his supervisor before he left National. Rollison also stated that he did not file an additional report concerning the injury, because the injury came from an existing claim. Additionally, Rollison stated during his deposition that National had informed its employees that it had paid out over a quarter million dollars in workers' compensation claims and that it wanted employees to try not to get hurt. Specifically, Rollison identified "Mr. Kitzler" as the National employee who was at these meetings and promoted safety at National. (Rollison Dep. p. 10). Also, Rollison agreed that National's policies were intended to create a safe work environment and to avoid expenses for the workers' compensation claims.
 {¶ 8} In October of 2004, Appellees moved for summary judgment against Rollison. In their motion for summary judgment, Appellees claimed that R.C. 4123.90 does not prohibit an employer from applying facially neutral disciplinary policies and that Rollison's failure to take a drug and alcohol test when he sought medical treatment for a work-related injury on January 12, 2004 was a non-retaliatory reason for discharge.
 {¶ 9} In November of 2004, Rollison filed a motion contra to Appellees' summary judgment motion. Attached to his Motion, Rollison filed an affidavit as to the events leading up to the filing of his complaint. In his affidavit, Rollison provided:
7. On January 12, 2004, I was having increased pain as aresult of my neck injury of October 6, 2003, which is recognizedfor an injury to my neck and back.
 8. I had been doing a lot of additional shoveling on thatday.
 9. Therefore, because of my increased pain I went to theemergency room at Marion General Hospital.
 10. I requested that Marion General Hospital treat me under myrecognized claim, which is 03-873951 recognized for cervicalstrain; thoracic strain.
 11. The Hospital requested to perform a blood alcohol test anddrug test.
 12. I refused to have those procedures performed.
 13. It is Company Policy that when you have a new injury youare required to have this additional testing.
 14. However, I was not there on a new injury but just a flareup of my previous workers' compensation injury of October 6,2003.
 15. Therefore, I believe that based upon my right of privacythat I was not required to undergo additional drug and alcoholtesting.
 16. Further in November 2003 Ray Ball called all employeestogether and cautioned them that workers' compensation injurieswere costing the employer a quarter of a million dollars a yearand that we were cautioned not to get hurt or file claims.
 17. I feel that my refusal to take the drug and alcohol testwas the pretext that the employer used to terminate me.
 18. I believe that the employer targeted me because I had somany industrial injuries and I was pursuing my claims.
 19. Therefore, I feel that I was terminated in retaliation forpursuing workers' compensation claims and costing the employeradditional money.
(Rollison motion contra Ex. 1).
 {¶ 10} Subsequently, Appellees filed a reply memorandum in support of their summary judgment motion. In their reply memorandum, Appellees argued that Rollison could not create a factual issue by submitting an affidavit contradicting his prior sworn deposition testimony. Specifically, Appellees noted that in Rollison's affidavit, Rollison claimed that Ball called National's employees together, informed them about the cost of the workers' compensation claims, and cautioned them not to get hurt or file workers' compensation claims. Appellees also noted that in his deposition, Rollison never stated anything about Ball telling all National employees to avoid filing workers' compensation claims. Additionally, Appellees noted that Rollison, in his deposition, admitted that "Mr. Kitzler" had come and informed National's employees that it had paid out over a quarter million dollars in workers' compensation claims and that it wanted employees to try not to get hurt, but never mentioned anything about not filing workers compensation claims.
 {¶ 11} Along with its reply memorandum, Appellees filed an affidavit of Ball. In his affidavit, Ball provided:
4. Upon review and inquiry as to [National's] past applicationof its Drug and Alcohol Abuse Policy, I determined that two otheremployees, apart from David Rollison, lost their jobs after theyrefused to take a drug test when called for under the terms ofthe Drug and Alcohol Policy. Keith Clark, a union-representedemployee at [National's] Columbus region facility, refused tosubmit to a post-accident drug test under the policy when askedfollowing an accident that occurred on company premises on March23, 2004. On March 23, 2004, the company sent Mr. Clark a letternotifying him that his employment was terminated due to hisrefusal to submit to a drug test when required. Following histermination, Mr. Clark filed a grievance under the applicableunion contract claiming that he should have not been tested sincethe accident happened while he was leaving the plant driving hispersonal vehicle. The company denied the grievance, and the uniondid not seek arbitration. Mr. Clark's termination stands.
 5. Following an accident, Monty Hardin, Sr., aunion-represented employee at [National's] Carey, Ohio plantrefused to submit to a drug test when asked at Wyandot MemorialHospital on July 21, 2005. Plant management told Mr. Harding thathe would be discharged because he refused to be tested. Mr.Hardin asked to be allowed to quit instead. The company agreed,and Mr. Hardin resigned his employment via written notice datedJuly 21, 2005. No grievance was filed on his behalf.
 6. To the best of my knowledge and belief, David Rollison,Keith Clark, and Monty Hardin, Sr. are the only employees who inthe past refused to submit to a post-accident drug test whenrequired under [National's] Drug and Alcohol Abuse Policy. All ofthem were treated equally. Each was informed that his employmentwould be terminated because he refused to be tested (except thatMr. Hardin was permitted to resign in lieu of termination;neither Mr. Rollison nor Mr. Clark asked to resign to avoidtermination).
 {¶ 12} In December of 2005, the trial court granted Appellees' motion for summary judgment.
 {¶ 13} It is from this judgment Rollison appeals, presenting the following assignment of error for our review:
The Trial Court erred in granting summary judgment in (Sic.)pursuant to Rule 56 when there are clearly genuine issues as tomaterial facts that should be heard by the trier of fact.
 {¶ 14} In the sole assignment of error, Rollison argues that the trial court erred in granting summary judgment. Specifically, Rollison asserts that viewing the evidence in a light most favorable to him there is a genuine issue of material fact as to whether his refusal to take a drug and alcohol test was a pretext to his termination. Additionally, Rollison asserts that he was terminated in retaliation for pursuing his workers' compensation claims and costing National additional money.
 {¶ 15} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v. HarwickChem. Corp., 73 Ohio St.3d 679, 686-87, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-59, 1992-Ohio-95.
 {¶ 16} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens Cty. Clerk of Courts,83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also, Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 {¶ 17} R.C. 4123.90 provides, in relevant part:
No employer shall discharge, demote, reassign, or take anypunitive action against any employee because the employee filed aclaim or instituted, pursued or testified in any proceedingsunder the workers' compensation act for an injury or occupationaldisease which occurred in the course of and arising out of hisemployment with that employer.
 {¶ 18} This statute "embodies a clear public policy that employers not retaliate against employees who exercise their statutory right to file a workers' compensation claim or pursue workers' compensation benefits." White v. Mt. Carmel Med. Ctr.,150 Ohio App.3d 316, 327, 2002-Ohio-6446, at ¶ 35 (citations omitted). Nonetheless, "[e]mployees who have filed for workers' compensation benefits may be discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim." Id. at ¶ 36, citing Markham v. Earle M. Jorgensen Co.
(2000), 138 Ohio App.3d 484, 493; Russell v. Franklin CountyAuditor (Sept. 28, 1999), 10th Dist. No. 98AP-1502.
 {¶ 19} To establish a prima facie case for wrongful termination based on retaliation for filing a workers' compensation claim, i.e., retaliatory discharge, an appellant must be able to prove the following: (1) he suffered an occupational injury; (2) he filed a workers' compensation claim; and (3) his discharge was in contravention of R.C. 4123.90.Wilson v. Riverside Hosp. (1985), 18 Ohio St.3d 8, 18. If an employee creates a prima facie case, the burden shifts to the employer to provide a legitimate non-retaliatory explanation for the discharge. Kilbarger v. Anchor Hocking Glass Co. (1997),120 Ohio App.3d 332, 338. "[I]f the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." Id.
 {¶ 20} In the instant case, we begin with a discussion of the trial court's inclusion for consideration of Rollison's affidavit filed in support of his motion contra to Appellees' request for summary judgment. As provided in its judgment entry, the trial court relied upon this Court's previous decision in Retterer v.Whirlpool Corp. (1996), 111 Ohio App.3d 847, when it considered Rollison's affidavit. In Retterer, this Court relied on its previous decision in Grant v. City of Marion (Dec. 28, 1995), 3d Dist. No. 9-95-37. In Grant, the plaintiff filed an affidavit with her memorandum opposing summary judgment that was contradictory to her earlier deposition testimony. Id. Finding that the trial court erred in failing to consider the plaintiff's affidavit, but that its error was not prejudicial to the plaintiff, this Court reasoned,
Although we too believe [the plaintiff's] deposition andaffidavit are contradictory, we also believe that the trial courterred by not considering [the plaintiff's] affidavit. The OhioSupreme Court, and this court, has said that conflictingstatements in a party's affidavit and deposition go to thecredibility of the witness, and not the admissibility of suchdocuments. See Turner v. Turner (1993), 67 Ohio St.3d 337,617 N.E.2d 1123; Overbee v. Tong, M.D. (Sept. 30, 1987),Hancock App. No. 5-86-15, unreported; Newland v. Amin, M.D.(Aug. 19, 1991), Allen App. No. 1-90-114.
Id. In their motion for summary judgment and appellate brief, Appellees argue that our precedent in Grant and Retterer is in conflict with many other Ohio and federal courts, which have concluded, "A party may not create a factual issue, thereby avoiding summary judgment, by merely submitting an affidavit recanting his prior sworn deposition testimony." Appellee's Brief p. 7 (citations omitted). Additionally, in Barile v. East EndLand Development, the Eleventh District explicitly noted, in a lengthy discussion, the conflict between courts as to whether it is proper to consider a non-movant's contradictory affidavit to defeat a motion for summary judgment. (Dec. 23, 1999), 11th Dist. No. 98-L-149.
 {¶ 21} Recently, the Ohio Supreme Court decided Byrd v.Smith, 110 Ohio St.3d 24, 2006-Ohio-3455. In Byrd, the Court determined the following certified question: "`[w]hether it is proper for courts to disregard an affidavit inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment.'" Id. at ¶ 8 (citation omitted).[4] In doing so, the Court answered:
[W]hen an inconsistent affidavit is presented in support of,or in opposition to, a motion for summary judgment, a trial courtmust consider whether the affidavit contradicts or merelysupplements the affiant's earlier sworn testimony. A movant'scontradictory affidavit will prevent summary judgment in thatparty's favor. A nonmoving party's contradictory affidavit mustsufficiently explain the contradiction before a genuine issue ofmaterial fact is created.
Id. at ¶ 29. Accordingly, the Court created a two-pronged test for determining whether it is proper for trial courts to disregard an affidavit of the nonmoving party that is inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment. The first prong requires that the "trial court must consider whether the affidavit contradicts or merely supplements the deposition." Id. at para. one of the syllabus. In making its determination on the first prong, the trial court is to evaluate all evidence that is presented pursuant to Civ.R. 56(C), unless a motion to strike has been properly granted pursuant to Civ.R. 56(G). Id. at ¶ 26. The second prong requires that if the affidavit appears to be inconsistent with his or her previous deposition testimony, "the court must look to any explanation for the inconsistency." Id. at 27.
 {¶ 22} While we recognize the Court's decision in Byrd, we refrain from deciding whether the trial court's consideration of Rollison's affidavit to an attempt defeat Appellees' motion for summary was appropriate, because neither party raised this issue as either an assignment of error or a cross-assignment of error. App.R. 3 16. Additionally, even assuming that the trial court properly considered Rollison's affidavit, as we will now discuss, the trial court did not err in granting summary judgment in favor of Appellees.
 {¶ 23} First, we find that Rollison met his initial burden and established a prima facie case for retaliatory discharge. As the trial court stated, and we agree, "[Rollison] has shown aprima facie case, that he had filed workers' compensation claims against [National]; that he was terminated by [National]; that [his] termination occurred close in time to the time of the filing of the workers' compensation claims, because the cost of such claims exceeded a quarter million dollars of expense to [National]." (Dec. 1, 2005 Judgment Entry pp. 3-4) (emphasis in original).
 {¶ 24} Next, Appellees responded with evidence of a legitimate non-retaliatory reason for terminating his employment. Specifically, Appellees provided that Rollison was terminated for his failure to submit to a drug and alcohol test, in January of 2004, at the Marion General Hospital Emergency Room. The burden then shifted to Rollison to produce evidence the non-retaliatory reason was pretexual. Thus, the critical issue becomes whether, construing the evidence in Rollison's favor, Rollison provided the trial court with evidence he was discharged in contravention of R.C. 4123.90 for filing a workers' compensation claim. A plaintiff may show he or she was discharged in contravention of R.C. 4123.90 by direct and/or circumstantial evidence. Kent v.Chester Labs, Inc. (2001), 144 Ohio App.3d 587, 592.
 {¶ 25} We find Rollison did not provide any evidence to rebut Appellees' evidence tending to show it had a non-retaliatory reason to terminate him, namely, that he failed to submit to a drug and alcohol test.
 {¶ 26} Rollison concedes that he refused to submit to a drug and alcohol test in January of 2004. However, he argues that he was not required to submit to a drug and alcohol test, because his injury was a flare-up of an earlier work related injury, which occurred in October of 2003. Additionally, Rollison claims that National's drug and alcohol testing requirement only applied to new injuries and that this injury was not a new injury. However, reviewing National's policy regarding drug and alcohol testing, we cannot find that drug and alcohol testing is limited to new injuries only. Specifically, National's policy provides, in pertinent part, that "Drug and/or alcohol tests shall be given to any employee implicated in any injury accident * * *."[5] (Rollison Dep. Ex. 10) (emphasis added). In his affidavit at paragraph eight, Rollison provided that his additional shoveling on January 12, 2004 was a factor, which caused him to go the Marion General Hospital Emergency Room. Construing Rollison's affidavit in a light most favorable to him, Rollison's injury would bring him within National's policy requiring a drug and alcohol test. Rollison did not provide any additional evidence, which would allow us to find that his injury occurred for some reason other than shoveling.
 {¶ 27} Additionally, Rollison claims that his refusal to submit to a drug and alcohol test was a pretext that National used to terminate him; that he was targeted because he many industrial injuries and was pursuing his claims; and, that he was terminated for pursuing workers' compensation claims and costing National additional money. However, other than in his affidavit, Rollison fails to provide any evidence in support of his contention that his termination was a pretext. On the other hand, Appellees presented evidence that demonstrated that every time a National employee failed to submit to a drug and alcohol test, the employee was terminated for that reason.
 {¶ 28} Upon review of this evidence, we find that Rollison has failed to bring forth any evidence demonstrating that a genuine issue of material fact exists that his termination was done as a mere pretext and that reasonable minds can come to but one conclusion, that conclusion is adverse to the party against whom the motion for summary judgment is made, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C);Horton, 73 Ohio St.3d at 686-87. Even when considering these facts in a light most favorable to Rollison, we simply cannot find that Appellees violated R.C. 4123.90. Accordingly, the sole assignment of error is overruled.
 {¶ 29} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant, P.J., and Shaw, J., concur.
[1] Raymond Ball is the Director of Resource Services and Labor Relations at National. National mines and sells aggregate stone products.
[2] We note that the caption of this case is Rollison v. Ball, et al. In the February 2004 complaint, Rollison's caption for the defendant provides "Raymond Ball National Lime Stone Company." (Feb. 2004 Complaint). However, within his complaint, Rollison does not state a cause of action against Ball and throughout his complaint recognizes National as the defendant in this case. See Feb. 2004 Complaint.
[3] Additionally, as the First Affirmative Defense, Appellees stated that Rollison failed to state a cause of action or claim as to Ball.
[4] The cases certified in Byrd were Byrd v. Smith (Feb. 7, 2005), 12th Dist. No. CA2004-08-067 and Retterer, supra.Byrd, 2006-Ohio-3455 at ¶ 7.
[5] National's policy provides, in toto, "Drug and/or alcohol tests shall be given to any employee implicated in any injury accident or accident involving equipment or property damage that requires completion of an accident report." (Rollison Dep. Ex. 10).